Judge ERDMANN delivered the opinion of the court.
Senior Airman Alejandro V. Arriaga was convicted at a general court-martial with members of housebreaking, as a lesser included offense of burglary, and one specification of indecent assault.[1] He was sentenced *53 to a dishonorable discharge, four years of confinement, forfeiture of all pay and allowances, and reduction to E-l. The convening authority approved the sentence and the United States Air Force Court of Criminal Appeals affirmed the findings but found that the sentence was inappropriately severe and approved only a bad-eonduet discharge, confinement for two years, forfeiture of all pay and allowances, and reduction to E-1. United States v. Arriaga, No. ACM 37439, 2010 CCA LEXIS 171, at *9, 2010 WL 2265581, at *25-*26, (May 7, 2010).
Before this court Arriaga presents two discrete arguments: his conviction for housebreaking must be set aside as housebreaking is not a lesser included offense of burglary under United States v. Jones, 68 M.J. 465 (C.A.A.F.2010); and, that he be granted additional confinement credit as relief for being deprived of his right to timely appellate review.[2] We hold that housebreaking is a lesser included offense of burglary. We further hold that Arriaga was denied his due process right to speedy appellate review and therefore reverse the decision of the United States Air Force Court of Criminal Appeals and remand the case for further action consistent with this opinion.

DISCUSSION

A. Lesser included offense
Arriaga lived in a duplex and a married couple, JC and DC, lived in the adjoining unit. Arriaga was friendly with the couple and they would occasionally attend his parties. On the evening in question JC, along with DC and her friend Holly, were watching football at their home. Arriaga stopped by and invited the group to go to a bar with him, but they declined and he left. Later, another friend, Will, arrived and the group began to drink alcoholic beverages. DC drank to the point where she said she was “buzzing, maybe on the verge of being drunk.”[3] Later in the evening the group began to watch a DVD in the living room. One by one everyone except Will fell asleep in the living room. At some point Will went outside to call a friend on his cell phone and have a cigarette. Will’s friend did not answer his call so Will went over to talk with Arriaga, who was outside his duplex unit visiting with friends. Arriaga asked him where the others were and Will told him they were all asleep. Will’s friend then returned his call and Will left Arriaga, returned to DC and JC’s front yard, and talked with his friend on his cell phone.
DC and JC’s apartment had two entrances, a back door with a deadbolt, which was generally locked, and the front door. Will testified that when he went outside for a smoke and to call his friend the front door was unlocked. After talking to his friend in the front yard for about fifteen minutes, Will saw a shadow moving inside the house and started to go back inside. When he found the front door locked, he knocked and was surprised when Arriaga opened the door and rushed out of the house. Will found DC on the loveseat where she had fallen asleep, beginning to cry. DC testified that she awoke to find Arriaga inside the house with his hand inside her pants and underneath her *54 underwear, rubbing her vagina and ultimately penetrating her with his fingers. DC reported the incident to Security Forces the morning following the incident. DC testified that she and her husband did not have an “open-door policy” with Arriaga and she had not invited nor allowed him in the house that night.
The charges of aggravated sexual assault and burglary arose from this incident. At trial, without objection, the military judge instructed court members on housebreaking as a lesser included offense of burglary.[4] As noted, Arriaga was found not guilty of aggravated sexual assault as well as burglary, but guilty of the lesser included offense of housebreaking.
Relying on Jones, Arriaga argues that housebreaking is not a lesser included offense of burglary under the elements test. Arriaga argues that the elements of the two offenses are not the same because the intent required for housebreaking is not as limited as that required for burglary. Arriaga goes on to argue that even if housebreaking is a lesser included offense of burglary, the evidence in this case did not fairly raise the offense of housebreaking. The Government responds that the offense of housebreaking was reasonably raised by the evidence and that under United States v. Alston, 69 M.J. 214 (C.A.A.F.2010), comparison of the statutory elements as charged in the specification is allowed and that under the language of the specification charged here, housebreaking is a lesser included offense of burglary.
“Whether an offense is a lesser included offense is a question of law we review de novo.” United States v. Miller, 67 M.J. 385, 387 (C.A.A.F.2009) (citations omitted). As there was no objection to the instruction at trial, we review for plain error. United States v. Maynard, 66 M.J. 242, 244 (C.A.A.F.2008). Plain error occurs when (1) there is error, (2) the error is plain or obvious, and (3) the error results in material prejudice. Id.
Article 79, UCMJ, states that “[a]n accused may be found guilty of an offense necessarily included in the offense charged or of an attempt to commit either the offense charged or an offense necessarily included therein.” Article 79, UCMJ, 10 U.S.C. § 879 (2006); see also Jones, 68 M.J. at 468. This court applies the elements test to determine whether one offense is a lesser included offense of another. Id. “Under the elements test, one compares the elements of each offense. If all of the elements of [housebreaking] are also elements of [burglary], then [housebreaking] is [a lesser included offense] of [burglary].” Id. at 470. The two offenses need not have “identical statutory language.” Alston, 69 M.J. at 216. “Instead, the meaning of the offenses is ascertained by applying the ‘normal principles of statutory construction.’ ” Id. (citation omitted).
The elements of burglary are:
(1) That the accused unlawfully broke and entered the dwelling house of another;
(2) That both the breaking and entering were done in the nighttime; and
(3) That the breaking and entering were done with the intent to commit an offense punishable under Article 118 through 128, except Article 123a.
Manual for Courts-Martial, United States pt. IV, para. 55.b. (2008 ed.) (MCM); see also United States v. Thompson, 32 M.J. 65, 66 (C.M.A.1991). The elements of housebreaking are:
(1) That the accused unlawfully entered a certain building or structure of a certain other person; and
(2) That the unlawful entry was made with the intent to commit a criminal offense therein.
MCM pt. IV, para. 56.b.; see also United States v. Davis, 56 M.J. 299, 300 (C.A.A.F.2002).
The burglary specification in the charge sheet alleged that Arriaga:
did, at or near Sumter, South Carolina, between on or about 6 October 2007 and on *55 or about 7 October 2007, in the nighttime, unlawfully break and enter the dwelling house of [DC], with the intent to commit an aggravated sexual assault therein.
Regardless of whether one looks strictly to the statutory elements or to the elements as charged, housebreaking is a lesser included offense of burglary. Comparing the statutory elements, it is impossible to prove a burglary without also proving a housebreaking. Furthermore, the offense as charged in this ease clearly alleges the elements of both offenses.
Nonetheless, Arriaga argues that housebreaking is not a lesser included offense as the second element of housebreaking is broader than the corresponding element in burglary. He notes that under burglary the intent required is limited to committing one of the offenses listed under Articles 118 through 128 in the UCMJ, excluding Article 128a, while the intent required in housebreaking is not limited to any specific offenses and requires only that there be intent to commit any criminal offense. Arriaga essentially argues that since an element of housebreaking can be proven by establishing the intent to commit an offense other than those listed in the third element of burglary, it cannot be a lesser included offense.
The fact that there may be an “alternative means of satisfying an element in a lesser offense does not preclude it from being a lesser-included offense.” United States v. McCullough, 348 F.3d 620, 626 (7th Cir.2004); see also United States v. Alfisi, 308 F.3d 144, 152 n. 6 (2d Cir.2002); Rutledge v. United States, 517 U.S. 292, 300, 116 S.Ct. 1241, 134 L.Ed.2d 419 (1996). Here the “intent” element of burglary was charged as the intent to commit an offense under Article 120, UCMJ, 10 U.S.C. § 920. That charging language also satisfies the “intent” element of housebreaking (intent to commit a criminal offense). While in another case it may be possible to prove a housebreaking offense by proving the intent to commit a criminal offense not designated in the third element of burglary, that is not the offense charged in this ease. The offense as charged included all of the elements of housebreaking and all of those elements are also elements of burglary. Housebreaking is therefore a lesser included offense of burglary.
Having determined that housebreaking is a lesser included offense of burglary, we turn to Arriaga’s argument that the evidence did not raise the offense of housebreaking and the military judge erred in instructing on that offense. “A military judge has a sua sponte duty to instruct the members on lesser included offenses reasonably raised by the evidence.” United States v. Upham, 66 M.J. 83, 87 (C.A.A.F.2008). Having reviewed the entire record, we conclude that the evidence clearly raised the offense of housebreaking and it was not error for the military judge to provide an instruction to the members on that offense.
B. Post-trial delay
Arriaga next argues that he was prejudiced by the delay between the completion of his trial and the convening authority’s action. The Government responds that the delay was neither unreasonable nor prejudicial. The Government goes on to argue that even if there was error, it was harmless beyond a reasonable doubt and in any event, no meaningful relief is available.
Whether an appellant has been deprived of his due process right to a speedy appellate review is a question of law we review de novo. United States v. Moreno, 63 M.J. 129, 135 (C.A.A.F.2006). To determine this we balance the four Barker/Moreno factors:[5] “(1) the length of the delay; (2) the reasons for the delay; (3) the appellant’s assertion of the right to timely review and appeal; and (4) prejudice.” Id. (citations omitted). No single factor is required, but a facially unreasonable length of delay triggers the full analysis. Id. at 136.
The post-trial delay arguments raised in this case compel a brief review of this court’s *56 recent appellate delay decisions before we turn to an analysis of the delay in Arriaga’s case. While the court has addressed appellate delay issues since 1974,[6] the most recent series of cases commenced in 2003. In Diaz v. Judge Advocate General of the Navy, 59 M.J. 34, 37-38 (C.A.A.F.2003), the court held that an accused has a constitutional due process right to a timely “full and fair review of his findings and sentence.” With the Diaz decision, the court began to address a resurgence of appellate delay eases.[7]
In Moreno we held that “our confidence that [the existing] procedural protections would suffice to ensure the speedy post-trial and appellate rights of servicemembers has been eroded.” 63 M.J. at 142. In that case the court prospectively adopted “a presumption of unreasonable delay that will serve to trigger the Barker four-factor analysis where the action of the convening authority is not taken within 120 days of the completion of trial.” Id. The Government, of course, has the opportunity to rebut the presumption in the second Barker/Moreno factor, “reasons for the delay.” See id. at 142.
Subsequent cases have addressed issues which were not raised in Moreno. Even in the absence of specific prejudice, a constitutional due process violation still occurs if, “in balancing the other three factors, the delay is so egregious that tolerating it would adversely affect the public’s perception of the fairness and integrity of the military justice system.” United States v. Toohey, 63 M.J. 353, 362 (C.A.A.F.2006). Relief in such cases is provided unless this court is convinced that the post-trial delay was harmless beyond a reasonable doubt. United States v. Allison, 63 M.J. 365, 370 (C.A.A.F.2006). Furthermore, the court may assume a due process violation and proceed straight to the harmless beyond a reasonable doubt analysis. Id. Finally, even in instances where post-trial delay was not harmless beyond a reasonable doubt, the court cannot provide relief where “there is no reasonable, meaningful relief available.” United States v. Rodriguez-Rivera, 63 M.J. 372, 386 (C.A.A.F.2006).[8] We now turn to the Barker/Moreno factors in Arriaga’s case.
1. Length of the delay
Before triggering a full analysis under the Barker/Moreno factors, the post-trial delay must first be facially unreasonable. Moreno, 63 M.J. at 136. As noted, a delay of 120 days or more between the completion of trial and the convening authority’s action is presumed to be facially unreasonable. Id. at 142.
Arriaga’s court-martial was completed on August 28, 2008. It took the court reporter eighty-two days to complete the record of trial. It then took trial counsel eighty days to authenticate the record of trial (162 days after trial). It took the military judge twenty-five days to authenticate the record of trial (187 days after trial). The convening authority took his action twenty-six days later, 243 days after trial. The 243-day period from the conclusion of trial to the convening authority’s action, while not as extreme as some periods of delay this court has dealt with, is not de minimis. The delay is unreasonable on its face and therefore triggers the full Barker/Moreno analysis.
Before proceeding to the full analysis, however, it is necessary to clarify exactly what triggers the start of the appellate delay clock. In its argument and brief the Govern *57 ment assumed, apparently based on the 120-day presumption in Moreno, that the appellate delay clock did not start on the date the trial concluded, but rather on the 121st day after trial. As a result of this erroneous assumption, the Government based its entire argument on a 123-day delay rather then the actual 243-day delay. As the thrust of the Moreno decision was to encourage compliance with appellants’ due process rights to speedy appellate processing, it is disconcerting that the Government now reads the Moreno 120-day period as a “free” period in which no time delay is computed. To ensure that there are no further misunderstandings, for this period of appellate delay, the clock starts to run the day that the trial is concluded and stops when the convening authority completes his action.[9]

2.Reasons for the delay

As noted, the 243-day delay between the completion of trial and the convening authority’s action is presumptively unreasonable. However, the Government may overcome this presumption by providing legitimate reasons for the delay. The Government argues that it “exercised due diligence” in preparing the record of trial while dealing with “two deployed senior captains, a pregnant trial counsel who reviewed the transcript while on maternity leave, inexperienced remaining captains in the office, a very heavy case load, and this fully-litigated 8-volume record of trial.”
We have held that personnel and administrative issues, such as those raised by the Government in this case, are not legitimate reasons justifying otherwise unreasonable post-trial delay. See, e.g., Moreno, 63 M.J. at 137 (“To allow caseloads to become a factor in determining whether appellate delay is excessive would allow administrative factors to trump the Article 66 and due process rights of appellants.” (quoting Diaz, 59 M.J. at 35)); Toohey, 63 M.J. at 360 (noting that timely preparation of the record is a government responsibility). Since the record provides no legitimate reason for the delay in the convening authority’s action, this factor weighs against the Government.
3. Assertion of the right to a timely review and appeal
This factor requires the court to examine whether Arriaga objected to the delay in any way or otherwise asserted his right to a timely review. Arriaga did not raise the appellate delay issue until he was at the Court of Criminal Appeals. However, “[t]he obligation to ensure a timely review and action by the convening authority rests upon the Government and [Arriaga] is not required to complain in order to receive timely convening authority action.” Moreno, 63 M.J. at 138 (citing United States v. Bodkins, 60 M.J. 322, 323-24 (C.A.A.F.2004)). While this factor does weigh against Arriaga, it does so only slightly. See id. (stating that the government bears “the primary responsibility for speedy processing”).
4. Prejudice
“ ‘In the ease of appellate delay, prejudice should be assessed in light of the interests of those convicted of crimes to an appeal of their convictions unencumbered by excessive delay.’ ” Id. (quoting Rheuark v. Shaw, 628 F.2d 297, 303 n. 8 (5th Cir.1980)). Those interests are: “ ‘(1) prevention of oppressive incarceration pending appeal; (2) minimization of anxiety and concern of those convicted awaiting the outcome of their appeals; and (3) limitation of the possibility that a convicted person’s grounds for appeal, and his or her defenses in ease of reversal and retrial, might be impaired.’ ” Id. at 138-39 (quoting Rheuark, 628 F.2d at 303 n. 8). Arriaga argues that he suffered prejudice because of oppressive incarceration as well as his anxiety and concern. We address his claims in inverse order.
*58 a. Anxiety and concern
An appellant must demonstrate a “particularized anxiety or concern that is distinguishable from the normal anxiety experienced by prisoners awaiting an appellate decision.” Moreno, 63 M.J. at 140. Because of his impending sex offender registration, Ar-riaga argues that the delay resulted in spontaneous anxiety attacks and that “this impending stigma” unreasonably burdened his aspirations to be a firefighter, as well as his ability to fully interact with his son. The Government responds that Arriaga has failed to connect any anxiety with the delay in this case.
Since the underlying conviction in this case remains in force, Arriaga must still register as a sex offender regardless of the delay. As a result Arriaga cannot show that the delay caused prejudice in regard to his impending sex offender registration. See Toohey, 63 M.J. at 361. Arriaga has therefore failed to demonstrate that he has suffered any particularized anxiety or concern.
b. Oppressive incarceration pending appeal
To prevail on a claim of unreasonable post-trial delay alleging oppressive incarceration, Arriaga must first succeed on a substantive claim in this court or the court below. Moreno, 63 M.J. at 139 (stating that an appellant must succeed in a substantive claim); Rodriguez, 60 M.J. at 256 (noting that a successful claim can occur in this court or the court below). Sentence appropriateness relief provides an appellant with substantive relief for the purposes of post-trial delay. See Article 66(e), UCMJ, 10 U.S.C. § 866(c) (2006).
On August 28, 2008, the court-martial sentenced Arriaga to four years of confinement and credited him for 156 days of pretrial confinement. Arriaga asserts that his initial maximum release date would have been March 25, 2012.[10] In its decision dated May 7, 2010, the Court of Criminal Appeals found that Arriaga’s sentence for a conviction of housebreaking was inappropriately severe and approved only a two-year period of confinement. 2010 CCA LEXIS 171, at *25-*26, 2010 WL 2265581, at *9. As a result of the revised sentence, Arriaga asserts that his maximum release date became March 25, 2010. Arriaga was released on May 14, 2010, one week after the decision of the Court of Criminal Appeals. As a result of the reduction in sentence, Arriaga spent fifty-one days in confinement beyond his adjusted maximum release date. Arriaga argues that had the post-trial processing been completed in a timely manner, the Court of Criminal Appeals would have issued its decision before his revised release date and he would not have spent an additional fifty-one days in prison.
If this case had been processed within the timelines set forth in Moreno, assuming it would take the Court of Criminal Appeals approximately the same period of time to issue their decision as they initially took in this case, the decision would have been issued prior to Arriaga’s revised maximum release date.[11] As a result, Arriaga has suffered specific prejudice in the form of oppressive incarceration as a result of the post-trial delay.
5. Balancing the Barlcer/Moreno factors
The unreasonable length of the delay, the lack of legitimate reasons advanced by the Government for the delay, and the specific prejudice suffered by Arriaga as a result of oppressive incarceration all weigh against the Government. Arriaga’s failure to assert his right to timely post-trial review weighs against him, but only slightly. Therefore, our balancing of the four Barker/Moreno factors leads us to conclude that the Government deprived Arriaga of his due process right to speedy review and appeal.
Arriaga has asked for an award of additional confinement credit as a remedy for this violation. In Moreno, this court provided a nonexclusive list of relief available to *59 reviewing courts depending on the circumstances of individual cases:
(a) day-for-day reduction in confinement or confinement credit; (b) reduction of forfeitures; (c) set aside of portions of an approved sentence including punitive discharges; (d) set aside of the entire sentence, leaving a sentence of no punishment; (e) a limitation upon the sentence that may be approved by a convening authority following a rehearing; and (f) dismissal of the charges and specifications with or without prejudice.
Id. at 143. Rather than direct specific relief, we instead remand this case to the Court of Criminal Appeals for it to apply its broad powers to fashion whatever relief, if any, it deems appropriate. See Toohey, 60 M.J. at 103-04 (recognizing the unique and broad powers of the Courts of Criminal Appeals to fashion appropriate relief).

DECISION

The decision of the United States Air Force Court of Criminal Appeals is reversed. The record is returned to the Air Force Judge Advocate General for remand to the Court of Criminal Appeals for action consistent with this opinion.

. Arriaga was charged with one specification of aggravated sexual assault, one specification of burglary, three specifications of indecent assault. one specification of assault consummated by a battery, and one specification of attempted rape. The attempted rape specification and one specifi *53 cation of indecent assault were dismissed prior to trial. Arriaga was found not guilty of all the remaining specifications, but was found guilty of housebreaking as a lesser included offense of burglary and one specification of indecent assault.

. We granted review of the following issues:
I. Whether, in light of this court's recent decision in United States v. Jones, 68 M.J. 465, 468 (C.A.A.F.2010), the Appellant's conviction for housebreaking must be set aside because the military judge issued erroneous and misleading instructions supporting housebreaking as an available lesser-included offense to the original burglary charge.
II. Whether Appellant was deprived of his right to speedy post-trial review when over 243 days elapsed between the date of sentencing and the date the convening authority took action and whether the Air Force Court of Criminal Appeals erroneously held that any delay was harmless beyond a reasonable doubt despite it approving only two years of Appellant's four-year sentence to confinement.
United States v. Arriaga, 69 M.J. 432, 432-33 (C.A.A.F.2010) (order granting review).

. DC also testified that she took prescription medication for bipolar disorder, which amplified the alcohol’s effects.

. The military judge also instructed court members on unlawful entry as a lesser included offense to burglaiy.

. The court adopted the factors set forth Barker v. Wingo, 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), noting that it is not limited to the Sixth Amendment context, but is also utilized "for reviewing post-trial delay due process claims.” Moreno, 63 M.J. at 135.

.Appellate delay cases decided by the court from 1974 through 2002 included: Dunlap v. Convening Authority, 23 C.M.A. 135, 48 C.M.R. 751 (1974); United States v. Banks, 7 M.J. 92 (C.M.A.1979); United States v. Clevidence, 14 M.J. 17 (C.M.A.1982); United States v. Dunbar, 31 M.J. 70 (C.M.A.1990); United States v. Hock, 31 M.J. 334 (C.M.A.1990); United States v. Hudson, 46 M.J. 226 (C.A.A.F.1997); United States v. Williams, 55 M.J. 302 (C.A.A.F.2001); United States v. Tardif, 57 M.J. 219 (C.A.A.F.2002).

. Toohey v. United States, 60 M.J. 100, 104 (C.A.A.F.2004); United States v. Rodriguez, 60 M.J. 239, 256 (C.A.A.F.2004); United States v. Jones, 61 M.J. 80, 84-86 (C.A.A.F.2005); Moreno, 63 M.J. 129 (C.A.A.F.2006).

. Between April 2005 and September 2006 this court received and decided a total of fifty-nine appellate due process delay cases as Moreno trailer cases. While the court still sees appellate due process cases, the number and severity has decreased significantly in recent years.

. This case concerned the delay between trial and the convening authority’s action. Moreno also addressed delay in the period between the convening authority’s action and filing at the appropriate court of criminal appeals as well as the period between filing at the court of criminal appeals and issuance of the decision. 63 M.J. at 142. Needless to say the time periods that establish a presumption of unreasonableness in those circumstances do not establish a "free” period in which no delay is computed.

. The Government does not dispute the calculations of these dates.

. The Court of Criminal Appeals issued its decision well within the eighteen-month period established in Moreno. See Moreno, 63 M.J. at 142.