# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
KERN, ALDYKIEWICZ, and MARTIN
Appellate Military Judges

**UNITED STATES, Appellee**
v.
**Private E1 JASON C. WAGNER**
**United States Army, Appellant**

ARMY 20111064

Headquarters, 25th Infantry Division
Kurt Bohn, Military Judge
Lieutenant Colonel Emily C. Schiffer, Acting Staff Judge Advocate (pretrial)
Colonel George R. Smawley, Staff Judge Advocate (post-trial)

For Appellant: Lieutenant Colonel Imogene M. Jamison, JA; Major Jacob D. Bashore, JA; Captain Stephen J. Rueter, JA (on brief).

For Appellee: Major Robert A. Rodrigues, JA; Major Catherine L. Brantley, JA; Captain Bradley M. Endicott, JA (on brief).

29 July 2013

-----------------------------------
MEMORANDUM OPINION
-----------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

ALDYKIEWICZ, Judge:

A general court-martial composed of officer and enlisted members convicted appellant, contrary to his plea, of aggravated sexual assault in violation of Article 120(c)(2), Uniform Code of Military Justice [hereinafter UCMJ], 10 U.S.C. § 920(c)(2) (2006 & Supp. III 2009), *amended by* 10 U.S.C. § 920 (2012). The panel sentenced appellant to a dishonorable discharge and confinement for six years. The convening authority approved the adjudged sentence.

Appellant's case is before this court for review pursuant to Article 66, UCMJ. Appellant raises three assignments of error and submits one matter pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982). We conclude that one of appellant's assigned errors, which alleges the military judge erred by not instructing

the panel that wrongful sexual contact and assault consummated by a battery are lesser-included offenses of aggravated sexual assault, warrants discussion but no relief. Appellant's remaining assignments of error, as well as the matter personally raised pursuant to *Grostefon*, are without merit.[1]

## I. BACKGROUND

On 30 November 2010, after work, DL joined some co-workers at a local bar. Among those present were DL, DL's co-worker WM, appellant, and appellant's friend RM. After consuming several beers and several shots of alcohol from glasses left behind at the table when DL went to the restroom, DL, WM, RM, and appellant proceeded to another bar where they continued to drink. At the second bar, DL drank another beer and shot. DL never met appellant prior to that evening and her interaction with appellant was minimal. The two barely exchanged greetings with one another, and their interaction did not involve anything of a physical or sexual nature.

Between 0330 hours and 0400 hours that morning, 1 December 2010, DL, WM, RM, and appellant left the second bar for appellant's apartment where they planned to continue drinking. DL, driving her own vehicle, followed WM to appellant's apartment having never been there before that evening. Once at the apartment complex, DL became separated from her friends, finding appellant's apartment with the help of an evening security guard who was en route to the apartment to tell appellant and his guests to lower their voices as they were making too much noise for that time of the morning. The security guard described DL as smelling of alcohol, having blood shot eyes, and talking loudly.

Present inside appellant's apartment were appellant, appellant's roommate JW, RM, DL, and WM. Once inside the apartment, DL was given another beer. By

---

[1] In appellant's two other assignments of error, he alleges that the evidence is legally and factually insufficient and that he was denied an opportunity to request that the convening authority defer and/or waive the automatic forfeitures in his case. However, we have no doubt that appellant engaged in a sexual act with DL without her consent and while she was substantially incapacitated. Therefore, in discharging our duties pursuant to Article 66, UCMJ, we conclude the evidence is legally and factually sufficient as to appellant's guilt of the charged aggravated sexual assault. *See* UCMJ art. 66(c); *United States v. Washington*, 57 M.J. 394 (C.A.A.F. 2002). Furthermore, appellant's claim of a "lost opportunity" during the post-trial phase of his court-martial, *see United States v. Fordyce*, 69 M.J. 501 (Army Ct. Crim. App. 2010) (en banc), fails for the same reason as that announced in *United States v. Axtell*, __ M.J. ___ (Army Ct. Crim. App. 2013) (en banc).

this time, she was groggy, staggering, and "wanted to sleep so badly that she couldn't bear it anymore." Shortly after her arrival, JW observed DL passed out on the living room floor, her beer spilling onto the new rug JW recently purchased for the apartment. After picking up the beer bottle and cleaning up the spilled beer, JW picked up the passed-out, unconscious, five-foot and eighty-pound DL. JW carried DL to appellant's bedroom, placing her fully clothed on appellant's bed where RM covered her. JW chose appellant's bed rather than his own because "if she was going to throw up or piss on herself it [was] not going to be in [his] bed."

Appellant later entered his bedroom and proceeded to remove DL's clothing, first removing her pants and then her underwear. He then proceeded to engage in sexual intercourse with DL as she lay there. As she regained consciousness, DL recalled wondering if she was dreaming. As appellant was penetrating her, DL thought, "I need to wake up. I need to wake up. I need to do something. I need to prevent this from happening to me." Notwithstanding these thoughts, she testified she "couldn't function . . . couldn't speak . . . couldn't do anything." She further testified that when appellant's penis first penetrated her vagina, she felt "[p]ain and disgust and hate all at the same time." Then DL's cellular phone rang, affording DL the opportunity to push appellant away from her. She answered the phone and spoke with her stepfather, telling him she would be home soon. Scared and not sure of what to do, DL called WM who was in the living room, approximately ten feet from appellant's bedroom. After her two phone calls went unanswered, DL sent WM a text message that read, "[appellant] is raping me." DL then ran out of appellant's bedroom, naked from the waist down, and collapsed on the living room floor crying. Seeing her partially naked co-worker, WM covered DL with a blanket and accompanied DL back into appellant's bedroom to locate her clothing.

At approximately 0545 hours, after finding her clothing and getting dressed, DL fled the apartment into the apartment complex parking area in search of her vehicle. As she drove away, she came across a noncommissioned officer, Sergeant MA who saw her in her vehicle crying. When asked if she was okay, DL told Sergeant MA she had been raped. Sergeant MA took DL to the apartment complex's security office where the same security guard she met earlier that morning called the Honolulu Police Department (HPD). Upon HPD's arrival, DL identified appellant as the man who raped her. After identifying appellant, DL was transported to the hospital where she was treated and a rape/sexual assault kit gathered.

## A. THE GOVERNMENT'S CASE

In addition to eliciting eyewitness testimony from the victim and others who observed DL on the evening and early morning hours of 30 November 2010, 1 December 2010, the government also offered DNA evidence and medical testimony. Following the assault, Dr. WL performed a sexual assault examination on DL. Doctor WL testified that he observed lacerations on DL's vagina, an injury

that WL described as typically occurring when "something is forced through that opening, very large, very suddenly, or very forcefully." The exam also found semen in DL's vagina. A forensic expert testified that the partial DNA profile from the semen found in DL's vagina was consistent with appellant's DNA profile.

The government also put on testimony that appellant admitted to drugging several females on separate occasions and having sex with them while they were unconscious. Appellant's male friend testified that appellant bragged, "he could have sex with any girl. No one could say no to him because he would just drug them and have sex with them while they were asleep." This same friend testified that he caught appellant putting prescription medication, specifically Adderall, in his drink, one of two drugs appellant confessed to placing in others' drinks, the second being Ambien. The government introduced appellant's prescription drug history which established appellant had access to both Adderall and Ambien. The panel also heard from CW who testified she awoke to find appellant on top of her while another individual stood nearby appearing to photograph or video the event with what appeared to be a camera-phone. When she awoke appellant's body straddled hers with appellant's pelvic area on her "private area." According to CW, this occurred during a night of drinking in appellant's apartment in which she felt faint and her limbs felt weak. Although supported by witness testimony, the appellant's admission to previously drugging women in order to have sex with them was unsupported by any toxicology reports. Similarly, there was no toxicology report associated with the assault of DL.

## B. THE DEFENSE'S CASE

The defense did not contest the fact that appellant engaged in a sexual act with DL. Instead, the defense attempted to show that the sex with DL was consensual because DL was not incapacitated, challenging her capacity that evening. The entire defense case focused on showing that DL was not substantially incapacitated. In its opening statement, the defense stated, in part: "[B]ottom line up front, December 1, 2010, we believe will show via [sic] consensual sexual encounter between Private Wagner and [DL] . . . ." The defense's opening concluded with: "When you hear all of the evidence, both from the government side and our side, we believe the evidence will show that any sex between [DL] and Jason Wagner on December 1, was consensual. . . ."

After attempting to establish a motivation to lie by cross-examining DL on her "exclusive" relationship with her boyfriend at the time, the defense challenged DL's alleged incapacitation the early morning hours of 1 December 2010. The defense cross-examined DL on the amount of alcohol she consumed, establishing that: prior to midnight she consumed no alcohol; from midnight until approximately 0200 hours she consumed two beers with two shots of alcohol; and from 0200 hours until approximately 0400 hours she partially consumed one beer with a shot. The defense

also established: around midnight DL drove herself from work to the first bar; DL drove herself to appellant's apartment around 0400 hours, about a fifteen-minute drive; DL was able to push appellant off of her when her step-father called her cellular phone; that DL knew what was happening when appellant removed her underwear, testifying "I wasn't fully aware, but I knew it was happening, because I just woke up from my sleep"; and, that DL told her step-father that she was okay and that she would be home before sunrise. The defense focused on DL's actions during the sexual act, establishing that she was moaning and not screaming as she had earlier told law enforcement agents from both HPD and the Army's Criminal Investigation Command. In addition to highlighting that DL changed her account of events from "screaming" during the sexual assault to "moaning" (moans described by her for the first time at trial as moans of "pain"), the defense introduced limited character evidence from one defense witness indicating she had a character for being untruthful.

After aggressively cross-examining DL on her actions before, during, and after the sexual act, the defense focused on the moaning coming from the bedroom, using one government merits and one defense merits witness to paint a picture of a consensual sexual encounter. Government witness RM, on cross-examination, described the sounds coming from the room as "moaning," characterizing the sounds as someone having sex. Defense witness and DL's co-worker WM described the moaning she heard "like a passionate moaning sound, pleasurable sexual sound." Neither RM nor WM, both of whom were approximately ten feet from the wall to appellant's bedroom, heard appellant say anything nor did they hear DL cry out or "scream" for help.

In closing argument, appellant's trial defense counsel argued: "[S]he was sleepy but she was awake, she was aware of this touch. She decided not to do anything about it. She decided to ignore it and she decides to continue to lay [sic] in the bed." Counsel's summation focused on DL's lack of credibility, highlighting her motivation to lie to protect her relationship with her boyfriend, concluding with: "In light of the lack of evidence the completely unreliable testimony of [DL] . . . and the numerous reasons to doubt this case, the defense asked [sic] that you find the only verdict that is allowed under the law. And that is one of not guilty. . . ."

## C. THE MILITARY JUDGE'S INSTRUCTIONS

Any and all substantive discussions about instructions apparently occurred during Rule for Courts-Martial [hereinafter R.C.M.] 802 sessions. For example, during an Article 39(a), UCMJ session, the military judge noted: "I do want to see counsel in chambers. I'm going to discuss some instruction issues at this time." The court then recessed. When the court reconvened, nothing regarding the chambers discussion(s) on instructions was captured for the record. Later, during another Article 39(a) session and prior to recessing for the evening, the military

judge noted: "[W]here we are going is I would like counsel here at 8:30 to prepare to discuss instructions, at least preliminarily." Then, immediately prior to recessing the court, the military judge directed counsel "in chambers for an 802 right now." The following morning, during the Article 39(a), UCMJ session before recalling the members, the military judge, talking to the appellant, stated:

> Yesterday we had a couple of those [802s], we talked about exhibits, and making sure everything was lined up right. We talked about scheduling and the flow of the trial, things like that. But there was no discussion until the end of the day. I started working on jury instructions that I am required to give to the members. And we discussed those with you yesterday. Now to talk about the one we had this morning--let's start with the 802 we had from yesterday.

Neither the government nor defense counsel had any additions or corrections to the military judge's R.C.M. 802 session summary. Although the quoted language references "jury instruction" discussions with appellant "yesterday," the substance of any such discussions appears nowhere in the record. The military judge then went on to discuss that morning's R.C.M. 802 session with appellant:

> You [appellant] might have noticed a lengthier session with counsel today off the record and that is why we are late, that is my fault. I am trying to keep up with everyone by getting my jury instructions ready and that involves trying to understand what theories may or may not be appropriate. During that time there was a discussion with your counsel as to what theory of defense--what affirmative defenses that are being raised by you may be appropriate. In that, it was bought (sic) up that they may or may not at that time be raising that if such actions did occur at all they may have been by consent and that indicated to the trial counsel--trial counsel indicated they may want to revisit the ruling of the court regarding evidence I admitted under rule 412, regarding Mrs. [L's] prior conduct with you.
>
> . . .
>
> This is just a lengthy process for me to start working on my jury instructions as we go through. I have these charging conferences we go through regularly so I can keep up with the evidence as it comes in.

Again, neither the government nor defense counsel had any additions or corrections to the military judge's R.C.M. 802 session summary.

At the close of testimony from the defense's last merits witness but prior to the defense resting, the military judge, at yet another Article 39(a), UCMJ session, advised counsel that at 1300 hours he would hold another "charging conference of the jury instruction," once again directing counsel to his chambers for another R.C.M. 802 session before recessing the court. When the court reconvened, the military judge again discussed the R.C.M. 802 session with appellant:

> And at the 802 out of your presence we had as your counsel may have told. I have been simply working through jury instructions and changes and corrections that the parties wanted to make and I will give them a chance to identify them on the record. Regarding jury instructions I have provided the parties a couple of drafts and have a couple of charging conferences with them regarding instructions I intend to offer.

Unfortunately, once again, neither the government counsel, defense counsel, nor the military judge provided any substantive details regarding the instructional discussions held. Additionally, the prior draft instructions referenced in the above excerpt are not a part of the record.

Finally, at the close of evidence, the military judge finalized the instructions he intended on giving, provided copies to both government and defense counsel, and sought objections or modifications thereto, stating in part:

> I have been simply working through jury instruction and changes and corrections that the parties wanted to make and I will give them a chance to identify them on the record.
>
> . . . .
>
> MJ:   Defense . . . [h]ave you had the opportunity to review the jury instructions I have provided?
>
> DC:   Yes, Your Honor.
>
> MJ:   Do you have any objections?
>
> DC:   No, Your Honor.
>
> MJ:   Do you have any additions?
>
> DC:   No, Your Honor.

> MJ:   Do you have any instructions that you would like to offer that we have talked about that you are not offering or that you want to make a record of?
>
> DC:   No, Your Honor.

Like the defense, the government had no objection or proposed additional instructions.

The military judge instructed the panel on the charged offense of aggravated sexual assault by penile-vaginal penetration of a substantially incapacitated victim, UCMJ art. 120(c)(2), as well as the defenses of consent and mistake of fact as to consent.  He further instructed that the government possessed the burden to disprove, beyond a reasonable doubt, both of these defenses.  The military judge did not instruct the panel on any lesser-included offenses.

## II.  LAW

"An accused may be found guilty of an offense necessarily included in the offense charged or of an attempt to commit either the offense charged or an offense necessarily included therein."  UCMJ art. 79.  "A military judge has a sua sponte duty to instruct the members on lesser-included offenses reasonably raised by the evidence."  *United States v. Upham*, 66 M.J. 83, 87 (C.A.A.F. 2008); R.C.M. 920(e)(2).  "An instruction on a lesser included offense is proper when an element from the charged offense which distinguishes that offense from the lesser offense is in dispute."  R.C.M. 920(e) discussion.  *See United States v. Griffin*, 50 M.J. 480 (C.A.A.F. 1999).  "[A]ny doubt whether the evidence is sufficient to raise the need to instruct on a lesser-included offense must be resolved in favor of the accused."  *United States v. Rodwell*, 20 M.J. 264, 267 (C.M.A. 1985).

In *Schmuck v. United States*, 489 U.S. 705, 715–16 (1989), the Supreme Court provided the legal framework that must be applied to determine whether a proposed lesser offense is necessarily included within a greater offense.  Construing Federal Rule of Criminal Procedure 31(c),[2] the Supreme Court adopted the elements test: "one offense is not necessarily included in another unless the elements of the lesser offense are a subset of the elements of the charged offense."  *Id.* at 716.  The elements test has since been adopted for use in the military.  *United States v. Jones*, 68 M.J. 465 (C.A.A.F. 2010); *United States v. Teters*, 37 M.J. 370 (C.M.A. 1993).

---

[2]  Rule 31(c) provides: "The defendant may be found guilty of an offense necessarily included in the offense charged."  Fed. R. Crim. P. 31(c).  Rule 31(c) is "almost identical" to Article 79, UCMJ.  *United States v. Jones*, 68 M.J. 465, 469 (C.A.A.F. 2010).

In its simplest form, the elements test compares individual elements of the two offenses at issue, the greater and the proposed lesser, to determine whether every element of the lesser is also an element of the greater. *Jones*, 68 M.J. at 470 ("If all of the elements of offense X are also elements of offense Y, then X is [a lesser-included offense] of Y. Offense Y is called the greater offense because it contains all of the elements of offense X along with one or more additional elements."). This approach "'permits lesser offense instructions only in those cases where the indictment contains the elements of both offenses,' and as a result 'gives notice to the defendant that he may be convicted on either charge.'" *United States v. Alston*, 69 M.J. 214, 216 (C.A.A.F. 2010) (quoting *Schmuck*, 489 U.S. at 718).

## III. DISCUSSION

The record does not sufficiently establish that appellant waived lesser-included offense instructions by pursuing an all-or-nothing strategy. Therefore, appellant was entitled to instructions upon any lesser-included offenses reasonably raised by the evidence. Appellant argues that the military judge erred by failing to instruct the panel on two lesser-included offenses in particular: wrongful sexual contact in violation of Article 120(m), UCMJ, and assault consummated by a battery in violation of Article 128, UCMJ. We agree with appellant that both wrongful sexual contact and assault consummated by a battery are lesser-included offenses of aggravated sexual assault. However, on the facts of this case, we conclude that the evidence did not reasonably raise any lesser-included offenses, to include wrongful sexual contact and assault consummated by a battery, and therefore, the military judge did not err by failing to provide lesser-included offense instructions. Assuming arguendo that wrongful sexual contact was raised by the evidence, we still conclude that appellant was not prejudiced by the omission of instruction on this offense.

## A. STANDARD OF REVIEW

Initially, we are faced with a question as to whether appellant purposefully sought to prevent the panel from considering any lesser-included offenses. "An accused may seek to waive an instruction on lesser included offenses and present an 'all or nothing' defense as a matter of trial tactics." *Upham*, 66 M.J. at 87 (citing *United States v. Pasha*, 24 M.J. 87, 91 (C.M.A. 1987)). A valid waiver leaves no error to assess on appeal. *United States v. Harcrow*, 66 M.J. 154, 156 (C.A.A.F. 2008). However, waiving lesser-included-offense instructions is distinct from merely forfeiting such instructions. "A forfeiture is basically an oversight; a waiver is a deliberate decision not to present a ground for relief that might be available in the law." *United States v. Campos*, 67 M.J. 330, 331 (C.A.A.F. 2009) (quoting *United States v. Cook*, 406 F.3d 485, 487 (7th Cir. 2005)). "[F]or a waiver to be effective it must be clearly established that there was an intentional relinquishment

9

of a known right or privilege." *Harcrow*, 66 M.J. at 157 (internal quotation omitted).

The record does not establish that the defense affirmatively waived lesser-included-offense instructions. The record is silent with regard to any express decision by the defense to pursue an all-or-nothing strategy in this case, although an objective review of the record in its entirety supports the conclusion that such an approach was in fact the defense's strategy. The record is silent as to the substance of any lesser-included offense discussions between the military judge and government or defense counsel. The record also fails to reveal the specifics of any such discussions that may have occurred off the record during any of the R.C.M. 802 sessions, or "charging sessions," purportedly touching on instructions. Therefore, we cannot find that appellant intentionally relinquished a known right simply because the defense failed to object to the findings instructions. Stated another way, we decline to find an affirmative waiver when a military judge chooses to apparently handle substantive discussions on instructions during R.C.M. 802 sessions and then does not thoroughly capture the substance of those discussions on the record.

Having declined to apply waiver in this case, we turn to the merits of appellant's claim. This Court reviews de novo whether an offense is necessarily included in a separate, greater offense. *United States v. Arriaga*, 70 M.J. 51, 54 (C.A.A.F. 2011). As appellant failed to object to the military judge's instructions, this court reviews for plain error. *United States v. Wilkins*, 71 M.J. 410, 412 (C.A.A.F. 2012). "Plain error occurs when (1) there is error; (2) the error is plain or obvious; and (3) the error results in material prejudice." *Arriaga*, 70 M.J. at 54.

## B. LESSER-INCLUDED OFFENSES

Appellant was charged with aggravated sexual assault in violation of Article 120(c)(2), UCMJ.[3] We hold wrongful sexual contact,[4] and assault consummated by a

---

[3] The charged offense of aggravated sexual assault in violation of Article 120(c)(2) was in effect between 1 October 2007 and 27 June 2012 and provides as follows:

(c) AGGRAVATED SEXUAL ASSAULT.—Any person subject to this chapter who—

(1) causes another person of any age to engage in a sexual act by—
(A) threatening or placing that other person in fear (other than by threatening or placing that other person in fear that any person will be subjected to death, grievous bodily harm, or kidnapping); or

(continued . . .)

battery are lesser-included offenses of the charged aggravated sexual assault. However, as explained below, the evidence at trial did not raise factual disputes requiring instructions on these lesser offenses. Therefore, the military judge did not err in omitting these instructions.[5]

---

(. . . continued)

>    (B) causing bodily harm; or

>    (2) engages in a sexual act with another person of any age if that other person is substantially incapacitated or substantially incapable of—

>        (A) appraising the nature of the sexual act;

>        (B) declining participation in the sexual act; or

>        (C) communicating unwillingness to engage in the sexual act;

>    is guilty of aggravated sexual assault and shall be punished as a court-martial may direct.

[4] The offense of wrongful sexual contact in violation of Article 120(m) was in effect between 1 October 2007 and 27 June 2012 and provides as follows:

>    (m) WRONGFUL SEXUAL CONTACT.—Any person subject to this chapter who, without legal justification or lawful authorization, engages in sexual contact with another person without that other person's permission is guilty of wrongful sexual contact and shall be punished as a court-martial may direct.

[5] Appellant does not argue that the military judge should have instructed upon attempted aggravated sexual assault in violation of Article 80, UCMJ, abusive sexual contact in violation of Article 120(h), UCMJ, or indecent acts in violation of Article 120(k), UCMJ, as lesser-included offenses of aggravated sexual assault in violation of Article 120(c)(2). We conclude the military judge did not err in failing to provide such instruction. The lesser-included offense of attempted aggravated sexual assault was not raised by the evidence. Secondly, appellant did not contest the fact that he engaged in a sexual act with DL. Therefore, assuming abusive sexual contact is a lesser-included offense, *see United States v. Wilkins*, 71 M.J. 410 (C.A.A.F. 2012), there was no factual dispute warranting instruction on this offense. *See United States v. Miergrimado*, 66 M.J. 34 (C.A.A.F. 2008). Finally, indecent acts is not a lesser-included offense of the charged aggravated sexual assault; it is an alternative offense. *United States v. Tunstall*, 72 M.J. 191, 195 (C.A.A.F. 2013).

*1. Wrongful Sexual Contact*

Applying the elements test, we conclude that wrongful sexual contact is a lesser-included offense of the charged aggravated sexual assault. In performing our analysis, we must compare an offender-focused greater offense with a victim-focused lesser offense. *See generally United States v. Neal*, 68 M.J. 289, 301 (C.A.A.F. 2010) (noting that the removal of consent as an element from Article 120(a) "was intended . . . to change the focus of the criminal process away from an inquiry into the state of mind or acts of the victim to an inquiry into the conduct of the accused" (quoting *Russell v. United States*, 698 A.2d 1007, 1009 (D.C. 1997))). This is a rare comparison. And while the differences in perspective reveal inevitable differences in wording, it is still impossible to prove the greater offense without first proving the lesser.

Before employing the elements test, we must first decide what elements comprise the offenses being compared. Article 120(c), UCMJ, prescribes several alternative ways in which an accused can be convicted of the greater offense of aggravated sexual assault, only one of which was charged in this case. In general, it is unclear whether "one looks strictly to the statutory elements or to the elements as charged." *Arriaga*, 70 M.J. at 55. *Cf. United States v. St. John*, __ M.J. ___, ___ (3) (Army Ct. Crim. App. 2013) (holding that for the purposes of a multiplicity analysis, the court must "look at the specification to determine if an offense is necessarily included in another"). However, as to defining the elements of the greater offense, *United States v. Alston* provides sufficient resolution. In *Alston*, our superior court employed the elements test by examining the elements of Article 120(c)(1)(B), UCMJ, without referencing elements of any of the alternative ways in which Article 120(c) could be violated. *Alston*, 69 M.J. at 216. In other words, the court implicitly treated the alternative statutory elements of the greater offense as components of separate crimes under the statute—crimes that were not charged and did not require comparison. We will use that approach here.

The aggravated sexual assault specification alleges appellant violated Article 120(c)(2), UCMJ:

> In that Private Jason C. Wagner, U.S. Army, did, at or near Schofield Barracks, Hawaii, on or about 1 December 2010, engage in a sexual act, to wit: penetration of [DL]'s vulva with his penis while [DL] was substantially incapacitated.

This particular offense under Article 120(c)(2) has two elements: (1) that the appellant engaged in a sexual act with another person, and (2) that the other person was substantially incapacitated. The lesser-included offense of wrongful sexual contact has three elements: (1) engaging in a sexual contact with another; (2) doing

so without the person's permission; and (3) doing so without legal justification or lawful authorization. UCMJ art. 120(m).

It is immediately apparent that the elements of these offenses differ in number and wording. However, "[t]he elements test does not require that the two offenses at issue employ identical statutory language. Instead, after applying the normal principles of statutory construction, we ask whether the elements of the alleged [lesser-included offense] are a subset of the elements for the charged offense." *United States v. Bonner*, 70 M.J. 1, 2 (C.A.A.F. 2011) (quoting *Alston*, 69 M.J. at 216 (quoting *Carter v. United States*, 530 U.S. 255, 263 (2000))) (internal quotation marks omitted).

We begin by defining then comparing the first two elements of the greater and lesser offenses. The greater offense requires a sexual act and the lesser offense requires a sexual contact. The sexual act charged in this case is defined as "contact between the penis and the vulva," which "occurs upon penetration, however slight." UCMJ art. 120(t)(1)(A). "Sexual contact" is defined as, *inter alia*, "the intentional touching, either directly or through the clothing, of the genitalia, anus, groin, breast, inner thigh, or buttocks of another person . . . with an intent to abuse, humiliate, or degrade any person or to arouse or gratify the sexual desire of any person." UCMJ art. 120(t)(2). As defined, a sexual contact permits conviction for a broader array of conduct. For example, a sexual contact can occur by touching the breasts, whereas a sexual act, as charged in this case, can only occur upon penile penetration of the vagina. It goes without saying that penile-vaginal penetration does not *necessarily* result in a touching of the breasts.

However, the fact that the lesser offense is broader than the greater offense does not run afoul of the elements test. A lesser offense may be necessarily included in the greater even though the lesser offense "encompasses a wider range" of conduct than the greater offense (i.e., a broader lesser offense). *Arriaga*, 70 M.J. at 55. *See Rutledge v. United States*, 517 U.S. 292 (1996) (finding that conspiracy under 21 U.S.C. § 846 was a lesser-included offense of continuing criminal enterprise under 21 U.S.C. § 848, even though it was possible to violate the lesser without violating the greater); *United States v. McCullogh*, 348 F.3d 620 (7th Cir. 2004); *United States v. Alfisi*, 308 F.3d 144 (2d Cir. 2002). *See also* Wayne R. LaFave, Criminal Procedure, § 24.8(b) at 1152–54 (4th ed. 2004), *available on* Westlaw at 6 Crim. Proc. § 24.8(e) (3d ed.) ("When the lesser offense is one defined by statute as committed in several different ways, it is a lesser-included offense if the higher offense invariably includes at least one of these alternatives."). The mere fact that it is possible to prove an element of the lesser offense, without also proving an element of the greater offense, does not prevent that lesser-offense element from being a "subset" of the greater-offense element. For that reason, when comparing the conduct proscribed by individual elements, the term "subset" is a misnomer—the

lesser-offense element need not be wholly subsumed within the greater-offense element.[6]

Therefore, the elements test does not require that every sexual contact results in a sexual act, only that every sexual act necessarily results in a sexual contact. We find this to be the case. In any situation where the penis penetrates the vagina, one form of sexual contact will also occur, i.e., an intentional touching of the genitalia. *See Wilkins*, 71 M.J. at 413. Additionally, the intent component of a sexual contact is also necessarily included within a sexual act. Under the statute, a "sexual act" has two definitions, one of which contains the same sexual intent language as that used in the definition of a "sexual contact." However, where the crime involves penile-vaginal penetration, which is true of this case, the definition of sexual act does not include a corresponding sexual intent. In the case of penile-vaginal penetration, there is no need to specify an explicit intent element—it is beyond cavil that every penile-vaginal penetration includes a corresponding sexual intent. *United States v. Demarrias*, 876 F.2d 674, 676–77 (8th Cir. 1989) (holding that the intent required for a sexual contact is necessarily included in a sexual act when construing the nearly identical definitions of sexual act and sexual contact in 18 U.S.C. § 2245 (1988) (current version at 18 U.S.C. § 2246 (2006))). *Contra United States v. Castillo*, 140 F.3d 874, 886 (10th Cir. 1998) (holding that the intent required for a sexual contact is not included in a sexual act when construing the nearly identical definitions of sexual act and sexual contact in 18 U.S.C. §§ 2242, 2243 (1994) (current version at § 2246 (2006))); *United States v. Sneezer*, 900 F.2d 177, 179 (9th Cir. 1990) (holding that the intent required for a sexual contact is not included in a sexual act when construing the nearly identical definitions of sexual act and sexual contact in 18 U.S.C. § 2245 (1988) (current version at § 2246 (2006))). We therefore conclude the first element of the lesser offense, engaging in a sexual contact, is necessarily included in the first element of the greater offense, engaging in a sexual act.

---

[6] In fact, when comparing the conduct proscribed by an individual element, it is the conduct proscribed by the greater-offense element that must be wholly subsumed within the lesser. Only where the element of the greater offense fits completely within the broader lesser-offense element, is it true that the lesser offense is necessarily proven in every prosecution of the greater. In other words, the conduct proscribed by the *greater offense* must be a subset, as that term is commonly understood, of the conduct proscribed by the *lesser offense*. Although the greater-offense element punishes a more serious form of conduct, that conduct is nevertheless a subset of the entire universe of conduct that the lesser-offense element proscribes.

We also conclude that the second element of the lesser offense, without permission, is necessarily included within the second element of the greater offense, substantial incapacitation. At first glance, the relationship of necessary inclusion between "substantial incapacitation" and "without permission" is not obvious; however, upon reference to the statute, it is clear that such a relationship exists.

First, we conclude "without permission" is synonymous with "lack of consent." We draw this conclusion because (1) permission is not separately defined under Article 120, UCMJ, (2) the crime of wrongful sexual contact is victim-focused, and (3) permission is equated with consent elsewhere in the statute:

> CONSENT AND MISTAKE OF FACT AS TO CONSENT.— Lack of permission is an element of the offense in subsection (m) (wrongful sexual contact). Consent and mistake of fact as to consent are not an issue, or an affirmative defense, in a prosecution under *any other subsection*, except they are an affirmative defense for the sexual conduct in issue in a prosecution under . . . subsection (c) (aggravated sexual assault). . . .

UCMJ art. 120(r) (emphasis added). This provision specifically references wrongful sexual contact and then states that "consent" is not an issue in "any other subsection." Thus, the statute refers to permission and equates it with consent. In our view, the difference between permission and consent is one engendered by the focus of the crime, i.e., a victim-focused offense versus an offender-focused offense, and not one of substantive import: the offender is said to have acted without consent, whereas the victim is said to have not given permission. In either case, the issue is still whether consent, as defined in the UCMJ, has been disproven.[7]

Drawing upon the definition of consent, we conclude an incapacitated person is unable to give permission to the sexual conduct alleged in this case. In defining consent, the UCMJ provides:

> A person cannot consent to sexual activity if—
>
> . . . .
>
> (B) substantially incapable of—

---

[7] The military judge apparently reached this conclusion as well, as he instructed the panel that "'[w]ithout permission' means without consent." This comports with the standard instructions contained in the Military Judge's Benchbook. Dep't of Army, Pam. 27-9, Legal Services: Military Judges' Benchbook, para. 3-45-11 (1 Jan. 2010).

(i) appraising the nature of the sexual
conduct at issue due to—

(I) mental impairment or unconsciousness
resulting from consumption of alcohol, drugs, a
similar substance, or otherwise; or

(II) mental disease or defect which renders
the person unable to understand the
nature of the sexual conduct at issue;

(ii) physically declining participation in
the sexual conduct at issue; or

(iii) physically communicating unwillingness
to engage in the sexual conduct at issue.

UCMJ art. 120(t)(14). The greater-offense element of "substantially incapacitated" is not separately defined, but we find the definition provided by the military judge is adequate for resolving the legal issues in this case. The military judge instructed:

"Substantially incapacitated" means that level of mental
impairment due to consumption of alcohol, drugs, or
similar substance; while asleep or unconscious; or for
other reasons; which rendered the alleged victim unable to
appraise the nature of the sexual conduct at issue, unable
to physically communicate unwillingness to engage in the
sexual conduct at issue, or otherwise unable to make or
communicate competent decisions.

Thus, the instructed-upon definition of "substantial incapacitation" is simply a restatement of the circumstances in which a person is incapable of giving lawful consent. *See* UCMJ art. 120(t)(14). Consequently, someone who is substantially incapacitated cannot, as a matter of law, consent to a sexual act or a sexual contact.

In light of the foregoing definitions, it is impossible to prove the greater-offense element without also having proven the lesser-offense element. Every time an accused is proven to have engaged in a sexual act with a substantially incapacitated victim, the victim's permission is necessarily disproven. To prove that a person is substantially incapacitated is to prove that he or she is incapable of granting permission. *C.f. United States v. Gavin*, 959 F.2d 788, 791–92 (9th Cir. 1992) ("It is evident that to prove that one caused another to engage in a sexual contact by placing that other person in fear requires proving that the other person has not given permission for the contact. Those in fear are incapable of granting permission. To prove that a person acted in fear is to prove that the act was without

16

permission."). Stated a different way, "[i]f an accused proves that the victim consented, he has necessarily proven that the victim had the capacity to consent, which logically results in the accused having disproven an element of the offense of aggravated sexual assault—that the victim was substantially incapacitated." *United States v. Prather*, 69 M.J. 338, 343 (C.A.A.F. 2011). Furthermore, as discussed in detail above, it is unimportant that there may be numerous ways to prove that a sexual contact was done without the victim's permission. The converse need only be true—permission must be necessarily excluded every time a victim is proven to be substantially incapacitated. The statutory provisions provide exactly that.

Similarly, we conclude the third and final element of wrongful sexual contact (without legal justification or lawful authorization) is necessarily included within the greater offense. Accordingly, we hold wrongful sexual contact in violation of Article 120(m), UCMJ, is a lesser-included offense of aggravated sexual assault in violation of Article 120(c)(2), UCMJ.

### 2. *Assault Consummated by a Battery*

We further conclude that assault consummated by a battery is a lesser-included offense of the charged aggravated sexual assault. As discussed above, wrongful sexual contact is a lesser-included offense of aggravated sexual assault. Moreover, assault consummated by a battery is a lesser-included offense of wrongful sexual contact. *Bonner*, 70 M.J. at 3. Therefore, as a matter of law and logic, assault consummated by a battery is also a lesser-included offense of the charged aggravated sexual assault. *See Jones*, 68 M.J. at 472 (noting "the elements test for [lesser-included offenses] has the constitutionally sound consequence of ensuring that one can determine *ex ante*—solely from what one is charged with—all that one may need to defend against").

### C. "REASONABLY RAISED" BY THE EVIDENCE

Appellant argues that the panel could have, on the evidence presented, found DL had the capacity to consent, that is, was not substantially incapacitated, but still found appellant's sexual act was without DL's permission, thus requiring the military judge to instruct the panel on wrongful sexual contact and assault consummated by a battery. On the evidence before the panel in appellant's case, we disagree.

The evidence elicited by both the government and defense throughout the entirety of the case focused on DL's incapacitation or lack thereof. Although the record, as previously noted, is silent on whether the defense elected to make this an "all or nothing" case when discussing instructions with the military judge, the evidence of record makes clear that this case was just that. If the panel accepted the government's theory of incapacitation, the offense at issue is aggravated sexual

17

assault. However, if the panel rejected the evidence of incapacitation, there was no evidence upon which to find that the sexual act, an act conceded by appellant and not in dispute, was nonetheless "without [DL's] permission." In other words, DL's lack of consent was inexorably linked, throughout the entire trial, to her incapacitation. As our superior court noted:

> It is a well-established principle of military law that the military judge must properly instruct members on all lesser included offenses reasonably raised by the evidence. Indeed, so important is this duty that it arises *sua sponte* under appropriate circumstances, even without a defense request. It is not necessary that the evidence which raises an issue be compelling or convincing beyond a reasonable doubt. Instead, the instructional duty arises whenever "some evidence" is presented to which the fact finders might "attach credit" if they so desire.

*United States v. Jackson*, 12 M.J. 163, 166–67 (C.M.A. 1981) (quoting *United States v. Evans*, 17 U.S.C.M.A. 238, 242, 38 C.M.R. 36, 40 (1967)) (internal citations omitted). *See also United States v. Tunstall*, 72 M.J. 191 (C.A.A.F. 2013). On the facts of appellant's case, the element of "without [ ] permission" was not reasonably raised outside the context of DL's incapacitation. Therefore wrongful sexual contact was not reasonably raised by the evidence, and it was not plain error for the military judge to omit instruction on this offense.

For similar reasons, we conclude the military judge did not err by failing to instruct upon assault consummated by a battery as a lesser-included offense. "[A] lesser-offense charge is not proper where, on the evidence presented, the factual issues to be resolved by the jury are the same as to both the lesser and greater offenses." *Sansone v. United States*, 380 U.S. 343, 349–50 (1965). This principle is generally applied in assessing factual disputes between the greater offense and a particular lesser offense. *Id.*; *United States v. Miergrimado*, 66 M.J. 34 (C.A.A.F. 2008). We hold this principle is also applicable as between lesser offenses themselves. Thus, an instruction upon a less-serious, lesser-included offense is not required where the factual issues to be resolved by the panel are the same as to both that lesser-included offense and a more-serious, lesser-included offense. *See, e.g.*, *United States v. Rivera-Alonzo*, 584 F.3d 829, 835 (9th Cir. 2009) (holding failure to instruct upon a less-serious, lesser-included offense was not error where there was no dispute between that lesser offense and another instructed upon lesser-included offense).

Applied to this case, it is clear that there was no factual dispute as to the differing elements between wrongful sexual contact and assault consummated by a battery. As defined, the two offenses differ only as to the nature of the act committed: wrongful sexual contact requires a sexual contact, UCMJ art. 120(m),

whereas battery requires a harmful or offensive touching, UCMJ art. 128. In this case, there was no dispute as to the nature of the act performed—appellant conceded at trial that he engaged in sexual intercourse with DL. Thus, not only was assault consummated by a battery not raised by the evidence (for the same reasons wrongful sexual contact was not raised), but even if it was raised by the evidence, it would still have been improper to instruct upon it. Appellant has no right to a compromise verdict or any instruction that is tantamount to a request for jury nullification. *See, e.g.*, *United States v. Thomas*, 116 F.3d 606, 615 (2nd Cir. 1997) ("[I]n language originally employed by Judge Learned Hand, the power of juries to 'nullify' or exercise a power of lenity is just that—a power; it is by no means a right or something that a judge should encourage or permit if it is within his authority to prevent."). Accordingly, the military judge properly omitted instruction upon this lesser-included offense.

### D. PREJUDICE

Assuming arguendo the evidence reasonably raised wrongful sexual contact as a lesser-included offense, we conclude that appellant was not prejudiced by the military judge's failure to instruct upon it. In a plain error analysis, it is appellant's burden to show that the "error materially prejudices the substantial rights of the [appellant]." UCMJ art. 59(a). An appellant meets this burden by showing a "reasonable probability that, but for [the error claimed], the result of the proceeding would have been different." *United States v. Dominguez Benitez*, 542 U.S. 74, 82 (2004) (quoting *United States v. Bagley*, 473 U.S. 667, 682 (1985)) (alteration in original). Where an instruction on a lesser-included offense is omitted, "reversal is required only when an appellate court is convinced that the *evidence* issues are such that a rational jury could *acquit* on the charged crime but *convict* on the lesser crime." *United States v. Wells*, 52 M.J. 126, 130 (C.A.A.F. 1999) (quoting *United States v. Moore*, 108 F.3d 270, 272–73 (10th Cir. 1997)) (internal quotation marks and alterations omitted). Stated another way, was there "ample evidence in [the] case from which the members could reasonably find that appellant committed [the] lesser offense . . . but not the greater charged offense [?]." *Wells*, 52 M.J. at 132.

On the facts of this case and for the reasons previously noted, we find a rational trier of fact could not acquit on the charged offense and yet convict on the offense of wrongful sexual contact. Therefore, appellant suffered no prejudice, let alone material prejudice, to a substantial right by any failure to instruct on wrongful sexual contact as a lesser-included offense of the charged offense.

### III. CONCLUSION

Upon consideration of the entire record, the submissions of the parties, and the matters personally raised pursuant to *Grostefon*, we hold the findings of guilty

and the sentence as approved by the convening authority to be correct in law and fact. Accordingly, the findings of guilty and the sentence are AFFIRMED.

Senior Judge KERN and Judge MARTIN concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court