# UNITED STATES AIR FORCE COURT OF CRIMINAL APPEALS

## UNITED STATES

**v.**

## Airman JACOB L. HOOPER
## United States Air Force

## ACM 38307

## 24 September 2014

Sentence adjudged 19 October 2012 by GCM convened at Luke Air Force Base, Arizona.  Military Judge:  William C. Muldoon.

Approved sentence:  Dishonorable discharge, confinement for 3 years, and reduction to E-1.

Appellate Counsel for the Appellant:  Lieutenant Colonel Jane E. Boomer and Major Thomas A. Smith.

Appellate Counsel for the United States:  Lieutenant Colonel C. Taylor Smith; Major Daniel J. Breen; and Gerald R. Bruce, Esquire.

Before

HECKER, MITCHELL, and TELLER
Appellate Military Judges

OPINION OF THE COURT

This opinion is subject to editorial correction before final release.

HECKER, Senior Judge:

Contrary to his pleas, the appellant was convicted at a general court-martial of fleeing apprehension, willful damage to government property, assault with a loaded firearm, carrying a concealed weapon, and willful discharge of a firearm, in violation of Articles 95, 108, 128 and 134, UCMJ, 10 U.S.C. §§ 895, 908, 928, 934.  Officer and enlisted members sentenced him to a dishonorable discharge, confinement for 3 years, and reduction to E-1.  The convening authority approved the sentence as adjudged.

On appeal, the appellant argues: (1) the military judge erred by instructing the panel on the unlawfulness of carrying a concealed weapon; (2) the military judge erred by taking judicial notice regarding the possession of a weapon on a federal military installation; (3) the evidence was factually and legally insufficient to sustain the appellant's conviction of willfully discharging a firearm; and (4) the convening authority deprived the appellant of a speedy appellate review by not taking action within 120 days of the court-martial. Finding no error that materially prejudices a substantial right of the appellant, we affirm the findings and sentence.[1]

*Background*

The charges in this case arose from an incident that occurred on Luke Air Force Base, Arizona, on 15 April 2012. That evening, the appellant went to the on-base home of his close friend, Senior Airman (SrA) MS. The two began drinking and the appellant showed his unloaded 5-shot Ruger .357 revolver to SrA MS and then returned it to his vehicle. After several hours, the appellant left.

The appellant returned to SrA MS's residence later. The two men began arguing and then physically fighting. An off-duty reserve security forces member, Airman First Class (A1C) CW, was nearby and heard yelling and a woman screaming. Telling a companion to call 911, A1C CW approached the house and, through an open door, saw the men scuffling on the floor. He entered the house, separated the men, and identified himself as a security forces member. The appellant was agitated so A1C CW escorted him outside and told him to wait for security forces to arrive.

Soon thereafter, the appellant began pounding on the door. The door swung open, and A1C CW saw the appellant raising a revolver in his direction. Acting on instinct, A1C CW lunged for the open door, used it as a shield, and pushed it closed. Just before the door slammed shut, A1C CW heard a gunshot. A spent bullet was later found in the wall near the door.[2]

Meanwhile, Staff Sergeant (SSgt) CM, who lived next door to SrA MS, came outside after he heard people yelling. He saw a man, later identified as the appellant, walk from behind his neighbor's house toward a parked vehicle. As the appellant was walking, SSgt CM saw him fire three times down into the ground. After SSgt CM yelled at him, the appellant pointed the weapon at SSgt CM. SSgt CM raised his hands and told

---

[1] Although the military judge ordered sealed the pages of the record of trial that pertained to a Mil. R. Evid. 513 closed hearing, these pages were not actually placed under seal. Accordingly, the Clerk of the Court is directed to seal pages 53–153, 166–516, and 1675–96 of the transcript in the original record of trial. The Government is directed to remove these pages from all other copies of the record of trial, as required by Air Force Manual 51-203, *Records of Trial*, ¶ 6.3.4 (27 June 2013).

[2] The appellant was acquitted of the charge which alleged aggravated assault by "shooting at [A1C CW] with a dangerous weapon."

the appellant he was unarmed and would not hurt the appellant. The appellant lowered the weapon and resumed walking towards the car but again pointed the weapon at SSgt CM before driving away.[3]

Security forces personnel soon began converging in the area. As they began approaching the residence, the appellant drove quickly around the corner, went around their roadblock, and headed for a nearby gate. After he found that gate closed, the appellant drove his car through the barrier, causing significant damage.[4]

After reaching his off-base residence, the appellant called the security forces office to report that he had been shot in the leg and wanted to turn himself in. Civilian police arrived and transported him to the hospital.

*Military Judge's Instructions*

The appellant was charged with and convicted of "unlawfully carry[ing] on or about his person [on Luke Air Force Base] a concealed weapon, to wit: a .357 Ruger revolver, which conduct was to the prejudice of good order and discipline in the armed forces."

The elements of this offense are that: (1) the appellant carried the Ruger on base while it was concealed on or about his person; (2) this carrying was unlawful; (3) the Ruger was a dangerous weapon; and (4) under the circumstances, this conduct was to the prejudice of good order and discipline in the armed forces. *See Manual for Courts-Martial, United States* (*MCM*), Part IV, ¶ 112.b. (2012 ed.). A weapon is concealed when it is intentionally covered or kept from sight and it is carried by a person or within a person's immediate reach. *MCM*, Part IV, ¶ 112.c.(1), (3). The panel was instructed that "[n]ot every concealment of a weapon constitutes an offense under the UCMJ. The government must prove beyond a reasonable doubt . . . that the accused's conduct was prejudicial to good order and discipline."

Without defense objection, the panel was also instructed, quoting the *Military Judges' Benchbook*, that:

> The carrying of a concealed weapon may be inferred to be unlawful in the absence of evidence to the contrary. However, the drawing of this inference is not required.

---

[3] The appellant was charged with aggravated assault by pointing a loaded weapon at Staff Sergeant CM but was convicted of the lesser included offense of simple assault with an unloaded firearm. He was also convicted of willfully discharging a firearm under circumstances that endangered human life for firing into the ground.

[4] For this, the appellant was convicted of fleeing apprehension and willful damage of government property in an amount greater than $500. He was acquitted of driving under the influence of alcohol.

In deciding this issue, you may consider along with all the evidence whether carrying a weapon is authorized by military regulation or competent military authority.

*See* Department of the Army Pamphlet 27-9, *Military Judges' Benchbook*, ¶ 3–112–1, Note 1 (1 January 2010).

Trial counsel also asked the military judge to take judicial notice that federal law prevents the possession of a firearm onto federal facilities except under very limited circumstances, citing to 18 U.S.C. § 930(a) and (d). Trial counsel moved to have this judicially noticed as domestic law, pursuant to Mil. R. Evid. 201A. With the agreement of the parties, the military judge instructed the panel:

I have taken judicial notice that it is a crime under the United States Code to knowingly possess a firearm on a federal military installation unless it is in the lawful performance of official duties, or if the possession is otherwise authorized for a member of the Armed Forces. This means you are now permitted to recognize and consider this fact without further proof. It should be considered by you as evidence with all other evidence in the case. You may, but are not required to accept as conclusive any matter I have judicially noticed.

The appellant now contends the military judge erred in giving both instructions.

Whether a panel was properly instructed is a question of law to be reviewed de novo. *United States v. Payne*, 73 M.J. 19, 22 (C.A.A.F. 2014). However, where counsel fails to object to an instruction at trial, we review the military judge's instruction for plain error. *Id.*; *United States v. Tunstall*, 72 M.J. 191, 193 (C.A.A.F. 2013); Rule for Courts-Martial 920(f). Under a plain error analysis, the appellant must show that: "(1) there was error; (2) the error was plain or obvious; and (3) the error materially prejudiced a substantial right of the [appellant]." *United States v. Girouard*, 70 M.J. 5, 11 (C.A.A.F. 2011). If the appellant shows a constitutional error, the burden shifts to the Government to show the error was harmless beyond a reasonable doubt. *United States v. Brewer*, 61 M.J. 425, 432 (C.A.A.F. 2005).

1. Presumptive inference instruction

Here, the Government was permitted to prove an essential element of its case— that the appellant's carrying of a concealed weapon was unlawful—by using a permissive inference of unlawfulness. *Cf. Brewer*, 61 M.J. at 430–31 (plain error found when military judge's instructions excluded defense witnesses to counter a permissive

inference and failed to differentiate between burden of production and burden of persuasion).  If there is no objection to a permissive inference instruction at trial, we will provide relief only if we find plain error.  *Id.*

The appellant acknowledges the "inference" instruction was affirmed in our superior court's decision in *United States v. Lyons*, 33 M.J. 88, 91 (C.M.A. 1991).  That court held that while the unlawfulness of carrying a concealed weapon is an essential element of the charged offense, the Government may still rely on a permissible inference to meet its burden.[5]  *Id.* at 89.  This inference was found to be constitutional because there is a "rational connection between the fact proved [carrying a concealed weapon] and the ultimate fact presumed [unlawfulness] . . . . [T]he inference [must not be] so strained as not to have a reasonable relation to the circumstances of life as we know [it]."  *Id.* at 90 (first, second, and final alterations added) (quoting *Tot v. United States*, 319 US 463, 467–68 (1943)) (internal quotation marks omitted).

The appellant argues, however, that "*Lyons* is no longer reliable law" because it is contrary to the Supreme Court's decision in *District of Columbia v. Heller*, 554 U.S. 570 (2008).  In his view, that decision found the "right to carry" weapons to be constitutionally protected personal conduct and therefore the Second Amendment[6] is the "evidence to the contrary" that now makes the inference per se impermissible.

We do not find plain error in the military judge's decision to provide the *Lyons* instruction to the panel, as the *Heller* decision does not affect the viability of *Lyons* as applicable to the facts of this case.  Although the Supreme Court in *Heller* held the District of Columbia's complete prohibition on the possession of usable handguns in one's home violated the Second Amendment, it also held the right to possess firearms was not "a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose."  *Heller*, 554 U.S. at 626.  As the right to bear arms is "not unlimited," it is not beyond the reach of all Government regulation.  *Id.* at 595.  In fact, the Court expressly stated "nothing in our opinion should be taken to cast doubt on . . . laws forbidding the carrying of firearms in sensitive places such as schools and government buildings," calling these "presumptively lawful regulatory measures."  *Id.* at 626, 627 n.26.

---

[5] Unlike most other permissive inferences, this inference has not been included in the *Manual for Courts-Martial* itself.  *See, e.g.*, *Manual for Courts-Martial, United States* (*MCM*), Part IV, ¶ 37.c.(5) (2012 ed.) ("[P]ossession, use, distribution, introduction, or manufacture of a controlled substance may be inferred to be wrongful in the absence of evidence to the contrary."); ¶ 43.c.(3)(a) ("[I]f a person does an intentional act which is likely to result in death or great bodily injury, it may be inferred that death or great bodily injury was intended."); ¶ 46.c.(1)(f)(ii), (the intent to steal in larceny cases may be inferred); ¶ 48.c.(5) (forgery may be inferred if an accused maintained possession of a document);  ¶  54.c.(4)(b)(ii)  (specific  intent  to  inflict  grievous  bodily  harm  may  be  inferred); ¶ 68b.c.(2) (awareness of possessing, receiving, viewing, distributing, or producing child pornography may be inferred).

[6] U.S. CONST. amend. II.

The *Heller* decision, therefore, did not change anything about an individual's right to carry firearms in a sensitive place where the Government has elected to forbid or regulate it and did not undercut the logic of *Lyons*' presumptive inference holding. There is still a rational connection between the appellant carrying a concealed weapon onto the base and the unlawfulness of that act such that the use of the inference remains permissible.

<u>2. Judicial notice of a federal statute</u>

The military judge also took judicial notice of a federal statute, with the concurrence of the parties, telling the panel, inter alia, that it is "a crime under the United States Code to knowingly possess a firearm on a federal military installation." The appellant argues the military judge erred as this instruction does not match the language found in the federal law.

The relevant federal statute, 18 U.S.C. § 930, "Possession of firearms and dangerous weapons in Federal facilities," states, in pertinent part:

> (a)    Except as provided in subsection (d), whoever knowingly possesses or causes to be present a firearm or other dangerous weapon *in a Federal facility* . . . or attempts to do so, shall be fined under this title or imprisoned not more than 1 year, or both.[7]

(emphasis added).

The United States Code further defines a federal facility, as "a building or part thereof owned or leased by the Federal Government, where Federal employees are regularly present for the purpose of performing their official duties." 18 U.S.C. § 930(g)(1). In contrast, the instruction agreed to by the parties stated it was a crime to knowingly possess a firearm "on a federal military installation."

Because the instruction does not comport with the federal statute, giving it to the members was error that was plain or obvious. This United States Code section does *not* prohibit the possession of firearms on military installations. Instead it prohibits such possession in certain buildings or parts of buildings where federal employees are regularly present to perform official duties on those installations. *See also United States v. Rodriguez*, 460 F. Supp. 2d 902, 911 (S.D. Ind. 2006) ("The plain and ordinary

---

[7]    Subsection (d) of this statute states subsection (a) shall not apply to (1) the lawful performance of official duties by an officer, agent, or employee who is authorized by law to engage in or supervise the prevention, detection, investigation, or prosecution of any violation of law; or (2) the possession of a firearm or other dangerous weapon by a member of the Armed Forces if such possession is authorized by law.

meaning of the word 'building' does not include a parking lot."). There was no evidence presented at trial to indicate the appellant possessed a firearm in any applicable building or part of a building. Thus, providing this instruction was error. *Cf. United States v. Wolford*, 62 M.J. 418, 419 (C.A.A.F. 2006) (recognizing that instructions must be correct and complete).

We must next determine whether this erroneous instruction materially prejudiced a substantial right of the appellant. The appellant argues this erroneous judicial notice, when coupled with the permissive inference instruction, improperly relieved the Government of its burden to prove the "unlawfulness" element and thus prejudiced the appellant.

We disagree. The defense theory at trial on this specification was that the Government failed to prove the weapon was ever "concealed" when it was on base. During findings argument, trial defense counsel argued:

> Of course, we admit he had a weapon and of course, we admit it shouldn't have been on base. He shouldn't have had it on base.
>
> The military judge has instructed you as [a] matter of law that you could just determine . . . that he probably shouldn't have had it on base. But, it's not charged with being on the base. It's charged with being concealed on base.

Trial defense counsel then spent several minutes discussing how the evidence failed to show the appellant ever "concealed" the weapon.

Given that defense strategy and the evidence presented at trial, we are convinced the instructional error did not materially prejudice the appellant's substantial rights. We find beyond a reasonable doubt that the members would have relied on the permissive inference and found the appellant's concealed carrying of the weapon to be unlawful, even in the absence of the erroneous judicial notice instruction. The panel was allowed to infer the concealed carrying was unlawful "in the absence of evidence to the contrary." The appellant's use of the weapon during this incident belies any implication that his concealed carrying of the weapon was pursuant to any official duty or claim of right or that it was authorized by any military authority or regulation.[8] He even conceded that "he shouldn't have had it on base."

---

[8] We note that carrying a concealed weapon on Luke Air Force Base (AFB) *is* prohibited. Based on documents submitted by the Government on appeal, the local wing's "integrated defense plan," generated as part of the installation commander's responsibility to establish security regulations, states that "[c]arrying concealed firearms . . . on Luke AFB is strictly prohibited except as required in the performance of official duties." 56th Fighter Wing Integrated Defense Plan (OPLAN) 31 (3 October 2011). Therefore, the military judge could have

*Discharge of a Firearm*

The appellant was convicted of willfully discharging a firearm under circumstances that endangered human life. This specification was based on the appellant's firing three shots into the ground, as witnessed by SSgt CM.

One of the elements of this offense is that the appellant's willful discharge of the firearm "was under circumstances such as to endanger human life." *MCM*, Part IV, ¶ 81.b.(3). The *Manual* explains that this

> refers to a reasonable potentiality for harm to human beings in general. The test is not whether the life was in fact endangered but whether, considering the circumstances surrounding the wrongful discharge of the weapon, the act was unsafe to human life in general.

*MCM*, Part IV, ¶ 81.c.

The appellant argues the evidence is insufficient to meet this requirement because he fired into the ground while SSgt CM was "quite a distance away," citing our decision in *United States v. Burns*, ACM S32084, (A.F. Ct. Crim. App. 18 December 2013) (unpub. op.).

We review issues of factual and legal sufficiency de novo. Article 66(c), UCMJ, 10 U.S.C. § 866(c); *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002). The test for factual sufficiency is "whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, [we are] convinced of the accused's guilt beyond a reasonable doubt." *United States v. Turner*, 25 M.J. 324, 325 (C.M.A. 1987). In conducting this unique appellate role, we take "a fresh, impartial look at the evidence," applying "neither a presumption of innocence nor a presumption of guilt" to "make [our] own independent determination as to whether the evidence constitutes proof of each required element beyond a reasonable doubt." *Washington*, 57 M.J. at 399.

"The test for legal sufficiency of the evidence is whether, considering the evidence in the light most favorable to the prosecution, a reasonable factfinder could have found all the essential elements beyond a reasonable doubt." *United States v. Humpherys*, 57 M.J. 83, 94 (C.A.A.F. 2002) (citations and internal quotation marks omitted). "[I]n resolving questions of legal sufficiency, we are bound to draw every reasonable inference

---

instructed the panel he had taken judicial notice that "the 56th Wing Integrated Defense Plan prohibits the carrying of concealed weapons on Luke Air Force Base unless it is in the lawful performance of official duties, or if the possession is otherwise authorized for a member of the armed forces."

from the evidence of record in favor of the prosecution." *United States v. Barner*, 56 M.J. 131, 134 (C.A.A.F. 2001).

We find the evidence both factually and legally sufficient to sustain the appellant's conviction. SSgt CM witnessed the appellant firing the gun into the ground. He testified that he lived next door to SrA MS in an attached duplex, along with his wife and children. He heard a commotion through the wall he shared with SrA MS and then yelling outside. He went outside "to make sure everything is ok" and saw a man holding a woman by the wrists. As he approached them, the man let go of the woman, and she walked toward SSgt CM. Several minutes later, SSgt CM saw the appellant walk out behind a vehicle in the driveway and fire his gun three times into the ground. SSgt CM described the area as "[j]ust a dirt/grass patch that sits between" two on-base residences. SSgt CM agreed on cross-examination that the gunshots were fired into the ground "[q]uite a distance away from where [he] was standing at that time." The appellant and SSgt CM were close enough to each other that SSgt CM could see the barrel of the weapon when the appellant then pointed it at him, despite the dim lighting.

Firing a handgun into the ground in base housing while neighbors are converging on the scene is "unsafe to human life" and creates a "reasonable potentiality for harm to human beings," as those bullets could ricochet and strike someone, including the appellant. Furthermore, the circumstances here include the appellant being under the influence of alcohol and in an agitated state which had already led to a physical altercation and the firing of the weapon inside a residence. The repeated gunshots invited exactly the type of physical confrontation that could have led to a tragic outcome. Unlike *Burns*, where a single shot was followed by the immediate disarming of the weapon, the appellant here followed his three shots with more threatening and aggressive behavior. *See Burns*, unpub. op. at 4.

We have considered all the circumstances surrounding his wrongful discharge to include the appellant's proximity to SSgt CM and others in base housing, the description of the small dirt patch, the investigators' inability to find any spent bullets in the ground, the appellant's consumption of alcohol, the evidence of his emotional state from being involved in an altercation, and that other military members were converging on the scene in determining if the act was "unsafe to human life in general." We determine beyond a reasonable doubt that it was.

Having weighed the evidence in the record of trial, with allowances for not having personally observed the witnesses, we are personally convinced beyond a reasonable doubt of the appellant's guilt. Similarly, we find a reasonable factfinder could have found all the essential elements beyond a reasonable doubt.

*Post-trial delay*

The appellant asserts he is entitled to relief because the Government violated his due process right to timely post-trial processing of his case when 136 days elapsed after trial until the convening authority took action.

We review de novo "[w]hether an appellant has been denied [his] due process right to a speedy post-trial review . . . and whether [any] constitutional error is harmless beyond a reasonable doubt." *United States v. Allison*, 63 M.J. 365, 370 (C.A.A.F. 2006). A presumption of unreasonable delay arises when the convening authority does not take action within 120 days of the completion of trial. *See United States v. Moreno*, 63 M.J. 129, 142 (C.A.A.F. 2006). This presumption triggers an analysis of the four factors elucidated in *Barker v. Wingo*, 407 U.S. 514 (1972), and *Moreno*. *See United States v. Arriaga*, 70 M.J. 51, 55 (C.A.A.F. 2011). Those factors are "(1) the length of the delay; (2) the reasons for the delay; (3) whether the appellant made a demand for a speedy trial; and (4) prejudice to the appellant." *United States v. Mizgala*, 61 M.J. 122, 129 (C.A.A.F. 2005); *see also Barker*, 407 U.S. at 530.

## 1. Length of the delay

The appellant's trial concluded on 19 October 2012. The convening authority took action on 4 March 2013, 136 days after the court-martial ended. As the convening authority's action did not take place within 120 days of the completion of trial, the length of the delay is unreasonable on its face, and we proceed to an analysis of the remaining three *Barker* factors.

## 2. Reasons for the delay

This factor weighs in favor of the appellant. Shortly after trial, the court reporter requested additional assistance in preparing the record. The transcript was not completed until 11 February 2012, 115 days after the court-martial ended. We recognize that this record of trial was lengthy (1931 pages and 106 exhibits), but it is the Government's obligation to complete the record preparation in a prompt manner. We remain mindful of our superior court's emphasis that "personnel and administrative issues . . . are not legitimate reasons justifying otherwise unreasonable post-trial delay." *United States v. Arriaga*, 70 M.J. 51, 57 (C.A.A.F. 2011). The remainder of the post-trial processing (staff judge advocate recommendation and addendum and the convening authority action) was not completed until 4 March 2012, 136 days after the trial ended.

## 3. The appellant's assertion of the right to timely review and appeal

This factor weighs slightly in favor of the appellant. The appellant did not object to the delay in this matter until he submitted his matters in clemency, 126 days following

the completion of his trial. Nonetheless, he did assert his right to timely post-trial processing at that time. "The obligation to ensure a timely review and action by the convening authority rests upon the Government and [the appellant] is not required to complain in order to receive timely convening authority action." *Moreno*, 63 M.J. at 138.

### 4. Prejudice

In *Barker*, the Supreme Court recognized a framework to analyze the prejudice factor in a speedy trial context, and the *Moreno* court adopted this framework in analyzing claims of prejudice arising from post-trial delay. *Moreno*, 63 M.J. at 140. Under this framework, we analyze whether the following interests of the appellant have been prejudiced: "(1) prevention of oppressive incarceration pending appeal; (2) minimization of anxiety and concern of those convicted awaiting the outcome of their appeals; and (3) limitation of the possibility that a convicted person's grounds for appeal, and his or her defenses in case of reversal and retrial, might be impaired." *Id*. at 147–48 (citations and internal quotation marks omitted).

Only the second sub-factor is applicable here. In his clemency submission and appellate brief, the appellant contends he was prejudiced by the delay in convening authority action because the appellant's wife was postponing her relocation plans until she learned whether the convening authority lowered the appellant's sentence to confinement so she could factor the appellant's release date into that decision. This does not demonstrate "a particularized anxiety or concern that is distinguishable from the normal anxiety experienced by prisoners" awaiting a convening authority decision. *See Arriaga*, 70 M.J. at 58 (internal quotations marks and citation omitted). This sub-factor weighs heavily against the appellant and ultimately dictates that the appellant is not entitled to relief.

We are also mindful of our authority to grant relief under *United States v. Tardif,* 57 M.J. 219 (C.A.A.F. 2002*)* and Article 66(c), UCMJ, even in the absence of prejudice. We decline to do so here.

### *Conclusion*

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of the appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c).

ACM 38307

Accordingly, the approved findings and sentence are

AFFIRMED.

 FOR THE COURT

STEVEN LUCAS
Clerk of the Court