# UNITED STATES NAVY-MARINE CORPS
# COURT OF CRIMINAL APPEALS
# WASHINGTON, D.C.

**Before**
**F.D. MITCHELL, J.A. FISCHER, R.Q. WARD**
Appellate Military Judges

**UNITED STATES OF AMERICA**

v.

**ADAM C. TERRAL**
**LIEUTENANT (O-3), U.S. NAVY**

**NMCCA 201300273**
**GENERAL COURT-MARTIAL**

**Sentence Adjudged**: 11 January 2013.
**Military Judge**: CAPT Colleen Glaser-Allen, JAGC, USN.
**Convening Authority**: Commander, Navy Region Mid-Atlantic, Norfolk, VA.
**Staff Judge Advocate's Recommendation**: CDR S.J. Gawronski, JAGC, USN.
**For Appellant**: LT Jessica Fickey, JAGC, USN.
**For Appellee**: CDR James Carsten, JAGC, USN; Maj David Roberts, USMC; LT Lindsay Geiselman, JAGC, USN.

**30 October 2014**

---
## OPINION OF THE COURT
---

**THIS OPINION DOES NOT SERVE AS BINDING PRECEDENT, BUT MAY BE CITED AS PERSUASIVE AUTHORITY UNDER NMCCA RULE OF PRACTICE AND PROCEDURE 18.2.**

PER CURIAM:

Members at a general court-martial convicted the appellant, contrary to his pleas, of violating a lawful order (fraternization) and wrongful sexual contact, in violation of Articles 92 and 120, Uniform Code of Military Justice, 10 U.S.C. §§ 892 and 920. The convening authority (CA) approved the

adjudged sentence of confinement for one year and a dismissal and, except for the dismissal, ordered it executed.

On appeal, the appellant raises multiple assignments of error.[1] We address three; legal and factual sufficiency of the wrongful sexual contact conviction, other acts evidence admitted under MILITARY RULE OF EVIDENCE 404(b), MANUAL FOR COURTS-MARTIAL, UNITED STATES (2012 ed.), and post-trial delay. After carefully considering the record of trial and the submissions of the parties, we are convinced that the findings and the sentence are correct in law and fact, and that no error materially prejudicial to the substantial rights of the appellant was committed. Arts. 59(a) and 66(c), UCMJ.

## Background

Married and 36 years old, the appellant, recently spot promoted to Lieutenant Commander, was the Chief Engineer aboard the USS OAKLEY HILL (LSD 51) at the time of his offenses. Ensign (ENS) SW, a recent arrival to the ship, was serving at the time as the Electrical Officer within the Engineering Department.

---

[1] (1) That the guilty finding for wrongful sexual contact is legally and factually insufficient;

(2) That the military judge erred by admitting evidence under MILITARY RULE OF EVIDENCE 404(b), MANUAL FOR COURTS-MARTIAL, UNITED STATES (2008 ed.);

(3) That the military judge erred in denying the appellant's request for production of a good military character witness;

(4) That unreasonable post-trial delay prejudiced the appellant;

(5) That the appearance of unlawful command influence tainted the CA in taking post-trial action;

(6) That the military judge erred by denying the appellant's request to admit evidence under MIL. R. EVID. 412;

(7) That the military judge erred in denying production of evidence relating to a past relationship of the victim; and

(8) That trial defense counsel were ineffective.

Assignments of error numbered (6) – (8) were raised pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982). We have reviewed those assignments of error not addressed herein and find them without merit. *United States v. Clifton*, 35 M.J. 79 (C.M.A. 1992).

On 24 January 2012, OAKLEY HILL was in port overnight at Yorktown, Virginia. That evening, the appellant accompanied ENS SW to the liberty bus and the two discussed ENS SW's plans to go to the base club. Advising her that "he didn't think it would be good for [her] to go out where [she] would only be around junior sailors", the appellant instead invited her to accompany him to the movies. Record at 566. The two then left the liberty bus and the appellant drove them in his wife's car to the movie theater.

After the movie ended, the appellant suggested that they get something to eat and the two went to a nearby fast food restaurant. While eating in the car, the appellant began talking about other female members of the crew and how she "seem[ed] like the only one that wouldn't tell anyone else if something happened." *Id*. at 572. He then asked her what she would do if "he took her to a dark place" and she replied, "I don't know." *Id*. After he made several other similar remarks, he drove to a nearby gas station. There he purchased two bottles of water and a box of condoms. On their way back to the ship, he pulled the car into a hotel parking lot.

ENS SW testified at trial by this point it was late in the evening and she became afraid. *Id*. at 574. The appellant pulled out of the hotel parking lot and began slowly driving in the opposite direction away from the ship. He then reached over and put his hand on her knee and then proceeded to move his hand to her crotch and rubbed his fingers over her clothing. She then pushed his hand away and said, "I can't." *Id*. at 583. She then asked him "if he had ever done anything like this before", to which the appellant described an earlier affair of his where "the woman had been the one that was confident [but] he wanted to be the confident one this time." *Id*. at 584. Following this remark, the appellant said, "[y]ou always give a girl a second chance to say no." *Id*. He then reached over, unbuckled her belt, placed his hand down her pants and touched her vagina.

ENS SW testified that when he did this at first she "froze" not knowing what to do, and then pulled his hand away again and said, "I'm sorry. I can't do this." *Id*. at 584-85. The appellant said nothing in response at first. Then he asked "what [her] dilemma was" to which she responded "your wife." *Id*. at 593.

The appellant then continued driving in a direction away from the ship before pulling off the road and parking in a nearby wooded area. Next, he reached over and pulled her knees

3

apart saying that "[he] need[ed] to be able to spread [her] legs wide because he's a big guy" and then he placed his hand down her pants again touching her vagina.  *Id*. at 604.  He then pulled up her shirt and started kissing her breasts.  As he started kissing her face, she briefly kissed him back.  She explained at trial that she didn't know what to do at this point and she didn't know why she briefly kissed him.  However, she then pretended to be asleep in an effort to get him to stop. *Id*. at 604-05.  The appellant then stopped his advances and proceeded to drive back to the ship.

## Legal and Factual Sufficiency

In his second assignment of error, the appellant asserts that the guilty finding for wrongful sexual contact is both legally and factually insufficient.

We review questions of legal and factual sufficiency *de novo*.  *United States v. Winckelmann*, 70 M.J. 403, 406 (C.A.A.F. 2011).  We review the legal sufficiency of the evidence by determining "whether, considering the evidence in the light most favorable to the prosecution, any reasonable fact-finder could have found all the essential elements beyond a reasonable doubt."  *United States v. Day*, 66 M.J. 172, 173-74 (C.A.A.F. 2008) (citing *United States v. Turner*, 25 M.J. 324, 324 (C.M.A. 1987)).  The test for factual sufficiency is whether "after weighing all the evidence in the record of trial, this court is convinced of the appellant's guilt beyond a reasonable doubt." *United States v. Rankin*, 63 M.J. 552, 557 (N.M.Ct.Crim.App. 2006) (citations omitted), *aff'd*, 64 M.J. 348 (C.A.A.F. 2007).

The term "reasonable doubt" does not mean that the evidence must be free of any conflict.  *Id*.  And when weighing the credibility of a witness, this court, like a fact-finder at trial, examines whether discrepancies in witness testimony resulted from an innocent mistake such as a lapse of memory or a deliberate lie.  *United States. v. Goode*, 54 M.J. 836, 844 (N.M.Crim.Ct.App 2001).  Additionally, the members may "believe one part of a witness' testimony and disbelieve another." *United States v. Harris*, 8 M.J. 52, 59 (C.M.A. 1979).

The appellant argues that ENS SW's testimony lacked credibility because of her inconsistent statements and her motive to fabricate.  Alternatively, he contends that the Government failed to prove beyond a reasonable doubt that consent or mistake of fact as to consent did not exist. Appellant's Brief of 16 Sep 2013 at 10-15.  We disagree.

4

We note that at trial the Government offered and the military judge admitted evidence corroborating many of the details of ENS SW's testimony. A ticket stub from the movie theater, the box of condoms purchased by the appellant and pictures of the various locations described by ENS SW were admitted into evidence. An investigating agent from Naval Criminal Investigative Service testified that surveillance video from the gas station displayed the appellant purchasing two bottles of water and a box of condoms. Record at 775-82.

Even so, the appellant argues that instances of hesitancy described by ENS SW in her testimony rendered her account of unwanted and unwelcome sexual contact "unfeasible". Appellant's Brief at 12. Furthermore, he argues that even at face value her testimony failed to demonstrate her unwillingness to engage in sexual contact sufficient to disprove a reasonable mistake of fact. *Id*. at 13-14.

ENS SW described multiple instances of uninvited and unwelcome sexual contact. Twice she described how she pulled the appellant's hand away from her body saying to him "I can't." Record at 583-85. Even faced with her unwillingness after the first instance, the appellant continued his aggressive and unwelcome advances commenting, "[y]ou always give a girl a second chance to say no." *Id*. at 584. Despite the appellant's assertions, we conclude that a reasonable fact finder could have found all elements of the offense beyond a reasonable doubt. Furthermore, we ourselves are convinced of the appellant's guilt beyond a reasonable doubt.

## Mil. R. Evid. 404(b)

At trial, the Government offered under MIL. R. EVID. 404(b) the testimony of LT HB, a female junior officer from OAKLEY HILL, and ENS SW's roommate. LT HB testified that several months earlier the appellant made sexually suggestive comments suggesting that he wanted to pursue a sexual relationship with her that she described as "creepy" and making her "uncomfortable". *Id*. at 534-38.

We review a military judge's evidentiary rulings for an abuse of discretion. *United States v. Thompson*, 63 M.J. 228, 230 (C.A.A.F. 2006). When a military judge balances the competing interests in admitting or excluding evidence, we will give great deference to a clearly articulated basis for the decision. *United States v. Manns*, 54 M.J. 164, 166 (C.A.A.F.

2000).  Conversely, when there is no such clearly articulated basis, we will be less deferential in our review.

The three-part test for admitting evidence under MIL. R. EVID. 404(b) is set forth in *United States v. Reynolds,* 29 M.J. 105, 109 (C.M.A. 1989).  First, the evidence must reasonably support a finding that the appellant committed prior crimes, wrongs or acts.  Second, the evidence must show a fact of consequence is made more or less probable by the existence of this evidence.  Third, the probative value of the evidence must not be substantially outweighed by the danger of unfair prejudice.  *Id.; see also United States v. Barnett*, 63 M.J. 388, 394 (C.A.A.F. 2006).

In her ruling, the military judge found that the appellant's sexually suggestive comments toward LT HB occurring approximately four months before the charged offenses were relevant "to establish the [appellant's] state of mind, intent, modus operandi, and/or motive", and demonstrated his "willingness to engage in inappropriate conduct with female wardroom members and his desire for a relationship with someone other than his wife to gratify his sexual desires."  Appellate Exhibit XXXVII at 4-5.  Further, the military judge concluded that the evidence's probative value was not substantially outweighed by the danger of unfair prejudice particularly when coupled with an appropriate limiting instruction.  *Id.*[2]

The appellant argues that the military judge erred in applying the second *Reynolds* prong because, unlike ENS SM, LT HB was a peer of the appellant's,[3] and "just because a man is romantically interested in one female does not mean he would sexually assault another."  Appellant's Brief at 20.  Further, he argues that such evidence had no logical bearing on consent or mistake of fact as to consent.  *Id.* at 19-20.

At trial, the main thrust of the defense case was that ENS SW either was lying in that the sexual contact did not occur, or that any contact was consensual or the result of an honest and reasonable mistake.  We conclude, as did the military judge, that evidence of the appellant's willingness and desire to make unwelcome and sexually suggestive overtures toward another female officer in the wardroom close in proximity to the charged

---

[2] The military judge provided a limiting instruction following LT HB's testimony and again during instructions on findings.  Record at 557; 847-48.

[3] The encounters described by LT HB occurred prior to the appellant's spot promotion to lieutenant commander.

6

offenses was probative of his intent and desire to engage in sexual conduct with ENS SW.  First, his comments toward LT HB bore the same sexually suggestive overtones as his comments toward ENS SW.  Second, in both instances the appellant alluded to sexual dissatisfaction in his marriage and, by implication, a desire to pursue a sexual relationship outside his marriage.  Finally, we note the detailed limiting instruction provided by the military judge to the panel on the appropriate use of this evidence.  Consequently, we conclude that the military judge did not err in admitting this evidence.

## Unreasonable Post-Trial Delay

In his fourth assignment of error, the appellant argues that he was prejudiced by unreasonable post-trial processing delay in that the CA did not take action until 178 days after trial, exceeding the 120-day rebuttable presumption established by *United States v. Moreno*, 63 M.J. 129, 142 (C.A.A.F. 2006).  Appellant's Brief at 28.  Although the appellant does not cite any prejudice resulting from this 58-day delay, he argues that we should grant sentence relief under our Article 66(c) statutory charter.  We review his claim *de novo*.  *Moreno,* 63 M.J. at 135.

In reviewing due process claims over speedy post-trial review, we evaluate the "(1) length of the delay; (2) the reasons for the delay; (3) the appellant's assertion of the right to timely review and appeal; and (4) prejudice."  *Id*. (citations omitted).  No one factor is determinative and we decide whether each factor favors the Government or the appellant.  *Id.* at 136.  The presumption of unreasonableness can be overcome by a showing of legitimate, case specific circumstances.  *Id.* at 143; *see also United States v. Arriaga*, 70 M.J. 51, 56-57 (C.A.A.F 2011).

Here, the appellant correctly notes that the length of the delay, 178 days, triggers a due process inquiry under *Barker v. Wingo*, 407 U.S. 514, 530 (1972).  *Moreno*, 63 M.J. at 136.  We next turn our attention to the reasons for the delay.

Other than two periods of delay explained below, the remainder of the post-trial processing is unremarkable.  It appears that the record of trial initially took approximately 67 days to prepare and forward to the military judge for review.  The military judge then returned the record for correction approximately 49 days later.  *See* Commander, Navy Region Mid-Atlantic ltr 5800 00L/790 of 8 Jul 13.  The CA cites the

7

unavailability of the military judge to authenticate the record of trial due to a crowded docket. See *id*. An additional 36 days lapsed before the corrected record was returned to the military judge for authentication. *Id*. While the delay in preparing the record and the military judge's unavailability are not model excuses for delay, we do not find these periods either collectively or individually to be facially unreasonable within the meaning of *Moreno* considering the size of the record and the numerous sealed portions of the transcript and exhibits. Therefore, this factor weighs only slightly in favor of the appellant.

Next, we examine whether the appellant objected to the delay or otherwise asserted his right to timely review. *Arriaga*, 70 M.J. at 57. We find that he did not. However, because the obligation to ensure a timely post-trial process ultimately rests with the Government, this factor only slightly weighs against the appellant. *See id*.

On the fourth factor, prejudice, we balance three interests: (1) prevention of oppressive incarceration; (2) minimization of anxiety and concern of those awaiting the outcome of their appeals; and, (3) limitation of the possibility that a convicted person's grounds for appeal, and his defense -- in the event of reversal and retrial -- might be impaired by the delay. *Moreno*, 63 M.J. at 138-41. In reviewing these factors, we conclude that the appellant has failed to meet his burden of establishing prejudice. We next consider whether this is an appropriate case to exercise our authority to grant relief under Article 66(c). *Toohey v. United States*, 60 M.J. 100, 101-02 (C.A.A.F. 2004). Having done so, we find the post-trial processing delay does not affect the findings or the sentence that should be approved in this case. Accordingly, we decline to grant relief.

## Conclusion

The findings and the sentence as approved by the CA are affirmed.

For the Court

R.H. TROIDL
Clerk of Court

8