# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
PENLAND, MORRIS, and ARGUELLES[1]
Appellate Military Judges

**UNITED STATES, Appellee**
v.
**Sergeant DAYTRON ABDULLAH**
**United States Army, Appellant**

ARMY 20230223

Headquarters, Fort Carson
Jacqueline L. Emanuel, Military Judge
Lieutenant Colonel Kenton E. Spiegler, Acting Staff Judge Advocate (pretrial)
Lieutenant Colonel Abraham L. Young, Acting Staff Judge Advocate (post-trial)

For Appellant: Colonel Philip M. Staten, JA; Major Mitchell D. Herniak, JA; Major Amanda Williams, JA (on brief); Colonel Philip M. Staten, JA; Lieutenant Colonel Autumn R. Porter, JA; Major Mitchell D. Herniak, JA; Major Amanda Williams, JA (on reply brief).

For Appellee: Colonel Christopher B. Burgess, JA; Lieutenant Colonel Jacqueline J. DeGaine, JA; Major Kalin P. Schlueter, JA, (on brief).

30 April 2024

------------------------------------
MEMORANDUM OPINION
------------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

ARGUELLES, Judge:

A military judge sitting as a special court-martial convicted appellant, pursuant to his pleas, of one specification of desertion, one specification of absence without leave, one specification of disobeying a superior commissioned officer, and one specification of wrongful use of marijuana in violation of Articles 85, 86, 90, and 112a, Uniform Code of Military Justice, 10 U.S.C. §§ 885, 886, 890, and 912a. [UCMJ]. Pursuant to the terms and conditions of the Plea Agreement, the military judge sentenced appellant to reduction to the grade of E-1, a bad-conduct discharge,

---

[1] Judge ARGUELLES decided this case while on active duty.

and confinement for 90 days.[2] The convening authority took no action on the findings and sentence.

The case is before this court for review pursuant to Article 66, UCMJ. Appellant raises one assignment of error, dilatory post-trial processing, which merits both discussion and relief.[3]

## BACKGROUND

After providing a urine sample in November of 2022, and knowing that it would test positive, appellant left his unit and texted his supervisor that "[a]fter yesterday I will no longer be coming in formation none of that. I'm done [ ] Do what y'all gotta do, I'm done." The day after appellant voluntarily returned to his unit in January, his troop commander ordered him not to leave the limits of Fort Carson or to drink alcohol. Several weeks later military police stopped appellant coming onto Fort Carson in an unregistered vehicle with expired license plates, no valid driver's license, no proof of insurance, and in possession of alcohol.

In February of 2023, knowing the command would deny his leave request, appellant went to Texas for five days without permission or authority to do so. After he returned and marijuana was discovered in his barracks room, appellant unsuccessfully attempted to flee from his escorts by running through his unit's operations facility and scaling a motor vehicle fence.

At sentencing, the Government offered into evidence appellant's Enlisted Record Brief, his Solider Talent Profile, and a General Officer Memorandum of

---

[2] Although the military judge discussed awarding appellant 51 days of pretrial confinement credit during the plea colloquy, when she announced her sentence on the record, she neglected to say anything about the pretrial confinement credit. The Statement of Trial Results, however, does correctly reflect an award of 51 days of pretrial credit. Appellant is not asserting that he did not receive this credit, but to the extent there is any confusion, we confirm that appellant's sentence should properly reflect the award of 51 days of pretrial confinement credit. *See United States v. McDonald,* ARMY 9900233, 2000 CCA LEXIS 330 (Army Ct. Crim. App. 13 Jul. 2000) (mem. op.).

[3] Block 31 of the Statement of Trial Results incorrectly states appellant suffered a conviction for a crime punishable by imprisonment for a term exceeding one year. We will exercise our discretion to correct this error. *See* Rule for Courts-Martial 1111(c)(2); *United States v. Pennington,* ARMY 20190605, 2021 CCA LEXIS 101, at *5 (Army Ct. Crim. App. 3 Mar. 2021) (summ. disp.) ("Exercising our authority under R.C.M. 1111(c)(2), we note and correct the following issues in appellant's post-trial documents . . . .").

Reprimand for a driving under the influence conviction he received in October of 2022. On the other hand, appellant called a number of witnesses, to include an investigator with the Fort Carson Criminal Investigation Division who testified about appellant's voluntary cooperation in another drug investigation without any promised benefit in return. Appellant also called a former team leader who described him by saying "[t]o this day, I have not had a soldier that I would say has been better performing than [appellant] was." This same witness also testified about how he worked with appellant in Hawaii, and explained that is where appellant met his wife, got married, and had a child. Although appellant's wife at the time claimed she would support his Army career and follow him to his next duty station, when the transfer orders to Fort Carson arrived, she instead remained in Hawaii and initiated divorce and child custody proceedings. Finally, appellant called his former boxing coach, as well as family members who offered compelling testimony as to his good character and "great" rehabilitative potential.

Appellant also gave an unsworn statement in which he took full responsibility for his actions and offered a heartfelt apology. Appellant explained how he attained the rank of E-5 in three years at his first duty station in Hawaii, and how after he got to Fort Carson with his family issues, "things started to fall apart in [his] career."

The Record of Trial (ROT) was 101 pages and took 164 days to process. This one-day trial took place on 20 April 2023, and the court reporter forwarded the ROT to the trial counsel for his review on 8 June 2023. Although the trial counsel completed his review the same day, the military judge did not receive the ROT for her certification until 11 September 2023, *96* days later. The military judge completed her review and certification 11 days later on 22 September 2023. The Office of the Staff Judge Advocate (OSJA) submitted a Post-Trial Processing Timeline memo ("memo") dated 27 September 2023 and signed by the Post-Trial Non-Commissioned Officer in Charge (NCOIC), which in total stated:

a. <u>Personnel Changeover and Experience</u>. The Post-Trial section received a new Staff Sergeant in April 2023. Between the months of April and August 2023, the civilian post-trial paralegal was tasked to train the new NCO within post-trial matters. Both Post-Trial team members are dually slotted in Magistrate Court and General Crime sections within the OSJA. All the above *may* have hindered the processing time for US v. Abdullah while balancing daily tasks within the other sections. (emphasis added).

b. <u>Operational Tempo</u>. There was an increase in court-martials between the months of May through August. The post-trial team worked diligently to meet all post-trial requirements for pending Courts-Martials as well as those that were back logged.

**LAW AND DISCUSSION**

We review allegations of unreasonable post-trial delay de novo. *United States v. Anderson*, 82 M.J. 82, 85 (C.A.A.F. 2022) citing *United States v. Moreno*, 63 M.J. 129, 135 (C.A.A.F. 2006)).

Since at least 2002, the Court of Appeals for the Armed Forces (CAAF) has recognized that service level courts of appeal have two separate and independent avenues to provide relief for dilatory post-trial processing: (1) the Due Process Clause of the Fifth Amendment; and (2) the statutory basis under Article 66 when there is no showing of "actual prejudice." *See United States v. Grant*, 82 M.J. 814, 819 (Army Ct. Crim. App. 2022) ("Absent a due process violation, we still have authority under Article 66, UCMJ, to grant relief 'when appropriate under the circumstances'") (citing *United States v. Tardiff*, 57 M.J. 219, 224 (C.A.A.F. 2002)); *Toohey v. United States*, 60 M.J. 100, 101-02 (C.A.A.F. 2004) (holding the right to timely appellate review has both statutory roots under Article 66 and constitutional roots under the Due Process Clause).[4]

In *Toohey*, the CAAF adopted the four-factor balancing test from *Barker v. Wingo*, 407 U.S. 514 (1972), to determine whether the post-trial delay constitutes a due process violation: (1) length of the delay; (2) reasons for the delay; (3) the appellant's assertion of his right to a timely appeal; and (4) prejudice to the appellant. 60 M.J. at 102.

---

[4] Prior to the implementation of the Military Justice Act of 2016 (MJA 2016) in January 2019, Article 66(d)(1), UCMJ granted this court the statutory authority to "affirm only the sentence, or such part or amount of the sentence, as the Court finds correct in law and fact and determines, on the basis of the entire record, should be approved." The Military Justice Act of 2016 amended Article 66 to add a new section (d)(2), which provides in pertinent part that this court "may provide appropriate relief if the accused demonstrates error or excessive delay in the processing of a court-martial after the judgment was entered into the record . . . ." There is nothing, however, in the plain language of Article 66(d)(2) indicating or in any way suggesting that Congress sought to: (1) overrule *Toohey* or otherwise alter the use of the *Barker* test to analyze a Due Process claim as set forth below; or, (2) overrule CAAF precedent recognizing our discretion to afford relief under Article 66(d)(1). *See United States v. Gale*, ARMY 20230142, 2024 CCA LEXIS 128 at *3 (Army Ct. Crim. App. 21 Mar 2024) (summ. disp.) ("While Article 66(d)(2), UCMJ, concerns itself solely with delays after the entry of judgment, we continue to 'reject any argument that Article 66(d)(2), UCMJ, somehow cabins our broad and well-established sentence appropriateness authority under Article 66(d)(1), UCMJ, to provide relief for dilatory post-trial processing occurring at other phases of a court-martial.'") (*citing United States v. Brown*, 81 M.J. 507, 511 n.2 (Army Ct. Crim. App. 2021).

With respect to the length of the delay, in *United States v. Moreno*, 63 M.J. 129, 142 (C.A.A.F. 2006), the CAAF established a presumption of reasonableness for post-trial processing where the convening authority took initial post-trial action within 120 days of trial, and the case was docketed with this court 30 days later. In light of the changes implemented by MJA 2016, we modified the *Moreno* timeline in *United States v. Brown* by holding that "this court will presume unreasonable delay in cases where more than 150 days elapse between final adjournment and docketing with this court." 81 M.J. 507, 510 (Army Ct. Crim. App. 2021). In *Brown* we also reiterated that "just as it was under the old procedures, staff judge advocates are advised to explain post-trial processing delays . . . ." *Id.* at 511.

In *United States v. Winfield*, issued one week after this case adjourned, we overruled *Brown*'s 150-day time limit, finding instead that some cases might justifiably take longer than 150 days to process for review, and that others should take significantly less time. 83 M.J. 662, 665 (Army Ct. Crim. App. 2023). Instead of imposing a bright-line time limit, we reaffirmed the requirement for an explanation as set forth in *Brown*, and held that in determining the reasonableness of the delay, "we will scrutinize even more closely the unit-level explanations for post-trial processing delays." *Id.* As we further explained in *Winfield*, "we are consistently interested to know about a case's transcript length, competing requirements (e.g., *actual* operational exigencies, in-court coverage), military judge availability, court reporter availability and utilization for transcription, and resource shortfalls (e.g., insufficient throughput capacity despite court reporter regionalization)." *Id.* at 666 (emphasis in original). Because this is a case that should have taken significantly less than 150 days to process, the length of the post-trial delay weighs heavily in favor of appellant.

Likewise, with respect to the purported reasons for the delay, we have continued to emphasize in both *Winfield*, and in a litany of subsequent unpublished decisions, that we expect the OSJA to provide a detailed explanation for any unwarranted delay. *See, e.g. United States v. Jefferson*, ARMY 20220448, 2023 CCA LEXIS 382 at *4 (Army Ct. Crim. App. 2023 6 Sep. 2023) (summ. disp.); *United States v. Brimmer*, ARMY 20210622, 2023 CCA LEXIS 253 at *5 (Army Ct. Crim. App. 9 Jun 2023) (summ. disp.); *United States v. Garrigus*, ARMY 20220259, 2023 CCA LEXIS 335 at *3 (Army Ct. Crim. App. 9 Aug 2023) (summ. disp.) ("Either way one looks at it - whether under *Brown* or *Winfield* - units owe an explanation for such slow post-trial action. When those who administer military justice in the field ignore binding precedent, we should not tolerate the resultant strain upon our system's credibility."); *United States v. Pulley*, ARMY 20220494, 2023 CCA LEXIS 289 at *2 (Army Ct. Crim. App. 6 Jul. 2023) (summ. disp.).

As such, we are highly troubled that once again, the purported explanation in this case falls far short of justifying or explaining why it took over three months to transfer a 101-page ROT from trial counsel to the military judge.

First, the memo does not even address, much less make any effort to give a specific reason for, the unacceptable 96-day delay. Instead, in two very short paragraphs it generally describes how the post-Trial section received a new NCO that needed training, and that the team was double-slotted in the Magistrate Court and General Crime sections, before stating "all of the above *may* have hindered the processing time" in this case. The memo then concludes with a second paragraph describing "an increase in court-martials [sic] between the months of May through August," and that the trial team worked diligently to meet its obligations. Unfortunately, the memo provides no specific numbers which would allow us to meaningfully gauge how many courts-martial were processed at Fort Carson in the summer of 2023. Nor does it make any reference to reaching out to other installations either within or outside the circuit for help in addressing the "backlog."

To say the memo falls far short of this court's firmly established requirements is an understatement. As such, the second *Barker* factor, the reasons for the delay, weighs heavily in favor of appellant. *See United States v. Arriaga*, 70 M.J. 51, 57 (C.A.A.F. 2011) ("[P]ersonnel and administrative issues, such as those raised by the Government in this case, are not legitimate reasons justifying otherwise unreasonable post-trial delay"); *Winfield*, 83 M.J. at 665-66 ("Staff judge advocates who decline to memorialize delays with thorough, credible, and relevant specificity do so at the peril of their units' cases on appeal"); *United States v. Jackson*, 74 M.J. 710, 719 (Army Ct. Crim. App. 2015) (rejecting the government's explanation for the delay based on "court reporter shortages and high number of cases tried"); *United States v. Canchola*, 64 M.J. 245, 247 (C.A.A.F. 2007) ("However, a general reliance on budgetary and manpower constraints will not constitute reasonable grounds for delay nor cause this factor to weigh in favor of the Government.")

Along the same lines, and further highlighting the OSJA's apparent lack of interest in addressing and fixing these recurring post-trial delay issues, is the fact that preparation of the memo in this case was delegated all the way down to the E-6 level. An SJA may delegate authority to write such a document for submission to this court, but they remain responsible for its content.

As to the third *Barker* factor, because appellant did not assert his right to a timely appeal, this factor weighs in favor of the government.

In assessing the fourth *Barker* factor of prejudice, we consider three sub-factors: "(1) prevention of oppressive incarceration pending appeal; (2) minimization of anxiety and concern of those convicted awaiting the outcome of their appeals; and (3) limitation of the possibility that a convicted person's grounds for appeal, and his or her defenses in case of reversal and retrial, might be impaired." *Moreno*, 63 M.J. at 138-39, quoting *Rheuark v. Shaw*, 628 F.2d 297, 303 n.8 (5th Cir. 1980). The first sub-factor is directly related to the success or failure of appellant's substantive appeal, and the second sub-factor requires appellant to show particularized anxiety that is distinguishable from the normal anxiety of

waiting for an appellate decision. *Id.* at 139-40. Applied in this case, because appellant does not raise any substantive issues on appeal other than post-trial delay, and has not demonstrated any "particularized" anxiety, the fourth *Barker* factor also weighs in favor of the government.

When there is no finding of prejudice under the fourth *Barker* factor, as is the case here, a due process violation only occurs when "in balancing the three other factors, the delay is so egregious that tolerating it would adversely affect the public's perception of the fairness and integrity of the military justice system." *Anderson*, 82 M.J. at 87 citing *Toohey*, 63 M.J. at 362. This is yet another such a case.

While we recognize that this court has not granted relief for similar delays in other cases, given the unique facts and circumstances of this case, to include the very strong sentencing case put on by appellant and the fact that the offenses at issue do not have any identifiable individual victims, we find that because the government's continued, blatant violation of our well-established precedent adversely affects the "public's perception of fairness and the integrity of the military justice system," relief is justified under the Due Process Clause. *See Toohey*, 63 M.J. at 362. For all of the same reasons, the post-trial delay was not harmless beyond a reasonable doubt. *See United States v. Allison*, 63 M.J. 365, 371 (C.A.A.F. 2006) ("In determining whether relief is warranted for a due process denial of speedy review and appeal, we will consider the totality of the circumstances in the particular case.").

For all of the same reasons, we find relief is also warranted under Article 66(d)(1).

## CONCLUSION

Upon consideration of the entire record, the finding of guilty is AFFIRMED. Only so much of the sentence extending to confinement for ninety days is AFFIRMED. All rights, privileges, and property, of which appellant has been deprived by virtue of that portion of his sentence set aside by this decision are ordered restored.

Senior Judge PENLAND concurs.

MORRIS, Judge, dissenting in part.

I agree with my colleagues that the post-trial delay, specifically the unexplained 96 days the government took to forward the record from the trial counsel to the military judge, was excessive. However, I would not find a violation of the Due Process Clause of the Fifth Amendment, because appellant failed to assert any prejudice and I do not find the delay so egregious that tolerating it would

7

adversely affect the public's perception of the fairness and integrity of the military justice system. *U.S. v. Anderson*, 82 M.J. 82, 87 (C.A.A.F. 2022) (citing *Toohey*, 63 M.J. at 362). When factoring in the timing of this case, which adjourned prior to this Court's decision in *Winfield*, the government's slow processing is less blatant disregard of precedent, than it is an indication they were slow to implement the necessary changes to their post-trial processes. On the basis of the entire record, factoring in the serious offenses and the failure to assert any prejudice, I find the sentence appropriate and would not grant any sentencing relief, and therefore I dissent in part.

FOR THE COURT:

JAMES W. HERRING, JR.
Clerk of Court